(No. 79712.—

KIMBERLY BRYSON, Appellant, v. NEWS AMERICA PUBLICATIONS, INC., *et al.*, Appellees.

*Opinion filed October 24, 1996.*

78

82

McMORROW, J., dissenting.

Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville (Harriet Homsher Hamilton, of counsel), for appellant.

Edwina Warner, of Troutt, Alexander, Popit &

Warner, of Benton, for appellee News America Publications, Inc.

Robert Michael Drone, of Conger & Elliott, of Carmi, for appellee Lucy Logsdon.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The plaintiff, Kimberly Bryson, brought an action against the defendants, News America Publications, Inc., and Lucy Logsdon. The plaintiff's two-count complaint alleged that she was defamed by the publication of an article entitled *Bryson*, which was written by defendant Logsdon and published by defendant News America in the March 1991 edition of Seventeen magazine.

The complaint was originally filed in the United States District Court for the Southern District of Illinois on August 6, 1991, but that action was dismissed for lack of diversity jurisdiction. The plaintiff refiled her action in the circuit court of St. Clair County in June 1992. On the defendants' motion, the cause was transferred under the doctrine of *forum non conveniens* to Gallatin County, where both the plaintiff and the defendant Logsdon were domiciled. On September 17, 1993, the plaintiff filed an amended complaint, which sought to add two counts seeking damages for false light/invasion of privacy against the defendants.

The plaintiff subsequently filed a second-amended complaint, which was dismissed by the trial court and is the subject of this appeal. Each count of the second-amended complaint alleged that an article appeared in the March 1991 edition of Seventeen magazine that referred to the plaintiff as a "slut" and implied that she was an unchaste individual. The complaint alleged that this language and implication were false. Counts I though IV of the second-amended complaint sought

damages for defamation. Counts V and VI sought damages for invasion of the plaintiff's privacy by portraying the plaintiff in a false light.

The defendants filed a motion to dismiss counts I through IV of the second-amended complaint, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), for failure to state a cause of action for defamation. The defendants also moved to dismiss counts V and VI of the complaint under section 2—619 of the Code, on the ground that these counts, which alleged invasion of privacy, were barred by the statute of limitations. The trial court granted the defendants' motions and dismissed the second-amended complaint. The appellate court affirmed. 273 Ill. App. 3d 1127. We granted the plaintiff's petition for leave to appeal. 155 Ill. 2d R. 315.

The plaintiff does not appeal from that portion of the appellate court decision which affirmed the transfer of the cause to Gallatin County on *forum non conveniens* grounds. She appeals only that part of the decision that affirmed the dismissal of her complaint in its entirety.

## FACTS

A short story entitled *Bryson*, written by defendant Logsdon, was published by the defendant News America in the March 1991 issue of Seventeen magazine as part of a group of stories entitled *New Voices in Fiction*. The story, written in the style of a first-person narrative, recounts a conflict between the unidentified speaker and her high school classmate, Bryson. According to the speaker, Bryson, "[a] platinum-blond, blue-eye-shadowed, faded-blue-jeaned, black polyester-topped shriek" who lives "on the other side of town" was "after" her. In the course of describing events that led up to an after-school fight between Bryson and the speaker,

the speaker discusses an incident that occurred two months earlier:

> "About two months ago Bryson was at a bonfire with these two guys that nobody knew. One had a tattoo, and they were all drinking. Lots. Who knows what guys like that made Bryson do. The next day she came into school with a black eye. Beth Harper looked at her too long, and Bryson slammed her up against a glass door and cracked her one clean in the mouth.
>
> Later that afternoon, as Bryson shouted down the hallways like always, I remembered what a slut she was and forgot about the sorriness I'd been holding onto for her."

The story continues as the speaker describes the fight that ensues between the speaker and Bryson. A footnote at the end of the story identifies the author, Lucy Logsdon, as a "native of southern Illinois."

The plaintiff's second-amended complaint, which was dismissed by the trial court, contained six counts. Each count alleges that the March 1991 edition of Seventeen magazine, including the article entitled *Bryson*, was published to the general public. The counts further allege that defamatory language appeared in that magazine "in that the article referred to the [p]laintiff as a 'slut' and implied that the [p]laintiff was an 'unchaste' individual." Each count further alleges that this language and implication were false and that each defendant permitted a false statement to appear through "malice or actual negligence."

Counts I and II, which attempt to state a cause of action for defamation *per se* against each defendant, allege damage to the plaintiff's reputation and seek appropriate compensatory relief, as well as punitive damages. Counts III and IV also attempt to state a cause of action for defamation, but allege that the damage to the plaintiff's reputation caused her to suffer pecuniary loss in the form of lost business opportunities and/or lost employment. Counts V and VI, which attempt to state a

cause of action for invasion of privacy/false light against each defendant, assert that the article placed the plaintiff in a false light in the community which would be objectionable to a reasonable person. These counts further alleged that the false light in which the plaintiff was placed caused her to suffer pecuniary losses stemming from lost business opportunities and/or employment and sought compensatory, as well as punitive, damages.

## ANALYSIS

We first consider whether the trial court properly dismissed counts I through IV of the plaintiff's complaint, which attempt to state a cause of action for defamation against the defendants. As previously noted, the defendants moved to dismiss these counts pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)). A section 2—615 motion attacks the legal sufficiency of a complaint. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). In ruling on a section 2—615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom. *McGrath v. Fahey*, 126 Ill. 2d 78, 90 (1988); *Shaffer v. Zekman*, 196 Ill. App. 3d 727, 731 (1990). In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. *McGrath v. Fahey*, 126 Ill. 2d 78, 90 (1988). The question presented by a motion to dismiss a complaint for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved

under the pleadings which will entitle the plaintiff to recover. *Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300 (1995).

## I. Defamation

With these general principles in mind, we consider the allegations in the plaintiff's complaint. A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with her. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992); Restatement (Second) of Torts § 559 (1977). A statement or publication may be defamatory on its face. However, even a statement that is not defamatory on its face may support a cause of action for defamation if the plaintiff has pled extrinsic facts that demonstrate that the statement has a defamatory meaning. See, *e.g.*, *Morrison v. Ritchie & Co.*, 4 Fraser, Sess. Cas., 645, 39 Scot. L. Rep. 432 (1902) (report that plaintiff gave birth to twins considered defamatory, where plaintiff proved, as extrinsic fact, that some readers knew that the plaintiff had been married only one month).

Here, counts I and II of the plaintiff's complaint attempt to state a cause of action for defamation *per se.* Only certain limited categories of defamatory statements are deemed actionable *per se*. If a defamatory statement is actionable *per se*, the plaintiff need not plead or prove actual damage to her reputation to recover. *Owen v. Carr*, 113 Ill. 2d 273, 277 (1986). Rather, statements that fall within these actionable *per se* categories are thought to be so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed. *Owen*, 113 Ill. 2d 273. If a defamatory statement does not fall within one of the limited categories of statements that are actionable *per se*, the plaintiff must plead and prove that she sustained actual damage

of a pecuniary nature ("special damages") to recover. See *Kolegas*, 154 Ill. 2d 1; *Heerey v. Berke*, 188 Ill. App. 3d 527, 532 (1989); *Mitchell v. Peoria Journal-Star, Inc.*, 76 Ill. App. 2d 154, 158-60 (1966).

The defendants raise three arguments in support of the trial court's dismissal of the defamation *per se* counts. They first claim that the statements do not fall within any of the limited categories of statements that are considered actionable *per se*. Second, they argue that the statements may not be considered actionable *per se* because they are reasonably susceptible to an innocent construction. Finally, the defendants claim that, even if the statements may be considered actionable *per se*, they are nevertheless expressions of opinion, protected under the first amendment to the United States Constitution. U.S. Const., amend. I. We consider each of these arguments in turn.

A. *Defamation Per Se Counts*

We first consider whether the disputed statements may be considered actionable *per se*. The plaintiff alleges that the article is actionable *per se* because it referred to her as a "slut" and implied that she was an "unchaste" individual.

Under our common law, four categories of statements are considered actionable *per se* and give rise to a cause of action for defamation without a showing of special damages. They are: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business. *Kolegas*, 154 Ill. 2d at 10-11. These common law categories continue to exist except where changed by statute. The Slander and Libel Act (740 ILCS 145/1 *et seq*. (West

1992)) has enlarged the classifications enumerated above by providing that false accusations of fornication and adultery are actionable as a matter of law. See *Owen v. Carr*, 113 Ill. 2d 273, 277-78 (1986); *Fried v. Jacobson*, 99 Ill. 2d 24, 27 (1983). Specifically, section 1 of that statute provides:

> "If any person shall falsely use, utter or publish words, which in their common acceptance, shall amount to charge any person with having been guilty of fornication or adultery, such words so spoken shall be deemed actionable, and he shall be deemed guilty of slander." 740 ILCS 145/1 (West 1992).

The defendants initially claim that this statute has no application here because it applies only to words that are *spoken* and not in circumstances, such as those here, where the words are written. We reject the defendants' attempt to so limit the statute. We note initially that the defendants' argument relies upon a distinction between spoken and written defamation (slander and libel) that existed at common law, but was abandoned long ago by our courts. At common law, libel and slander were analyzed under different sets of standards, with libel recognized as the more serious wrong. Illinois law evolved, however, and rejected this bifurcated approach in favor of a single set of rules for slander and libel. Libel and slander are now treated alike and the same rules apply to a defamatory statement regardless of whether the statement is written or oral. *Mitchell v. Peoria Journal-Star, Inc.*, 76 Ill. App. 2d 154, 159-60 (1966); *Harris Trust & Savings Bank v. Phillips*, 154 Ill. App. 3d 574, 579 (1987); *Irving v. J.L. Marsh, Inc.*, 46 Ill. App. 3d 162, 165 (1977). Given the merger of libel and slander, we reject the defendants' claim that the statute providing for an action where false accusations of fornication are made is not applicable here simply because the alleged defamation was in writing.

Further, after considering the plaintiff's allegations,

as stated in the complaint, we find that they fall within this statute's category of statements that are actionable *per se*. As previously stated, the statute applies when persons *use, utter or publish* words which amount to a charge of fornication or adultery. Here, the plaintiff's complaint alleges that the defendants, by using the word "slut," implied that she was "unchaste." The complaint thus alleged, in effect, that the defendants published words that falsely accused the plaintiff of fornication. The defendants' statements fall within this statutorily created category of statements that are considered actionable *per se*.

## B. *Innocent Construction Rule*

Even if a statement falls into one of the recognized categories of words that are actionable *per se*, it will not be found actionable *per se* if it is reasonably capable of an innocent construction. The innocent construction rule requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning. If, so construed, a statement "may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable *per se*." *Chapski v. Copely Press*, 92 Ill. 2d 344, 352 (1982); see also *Kolegas*, 154 Ill. 2d at 11. Only *reasonable* innocent constructions will remove an allegedly defamatory statement from the *per se* category. *Kolegas*, 154 Ill. 2d at 11; *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402 (1988). Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide. *Kolegas*, 154 Ill. 2d at 11; *Chapski*, 92 Ill. 2d at 352. The defendants offer two arguments in support of their position that the statement alleged to be actionable *per se* is reasonably susceptible to an innocent construction. Before addressing these two arguments, however, we briefly discuss a procedural point.

## 1. Procedural Note

As stated, the defendants' motion to dismiss was ostensibly brought under section 2—615. In ruling upon a 2—615 motion, a trial court may consider *only the allegations of the complaint* (*Curtis Casket Co. v. D.A. Brown & Co.*, 259 Ill. App. 3d 800 (1994)) and may not consider other supporting material (*Oravek v. Community School District 146*, 264 Ill. App. 3d 895 (1994)). Here, however, the defendants and the trial and appellate courts considered matters outside the complaint in addressing that portion of the motion which sought dismissal of the defamation *per se* counts under the innocent construction rule. The plaintiff's complaint simply alleged that she was defamed by an article entitled *Bryson* that appeared in Seventeen magazine, because the article referred to her as a "slut" and implied that she was "unchaste." The plaintiff did not attach a copy of the article to her complaint as an exhibit, nor did she recite the article within the complaint.

The defendants' motion to dismiss the *per se* counts under the innocent construction rule, however, was not limited to an analysis of the allegations in the plaintiff's complaint. Instead, the motion examined portions of the allegedly defamatory article which were not part of the plaintiff's complaint. The defendants' motion argued that, when the allegations of the complaint were considered in light of the article itself, it was evident that the allegedly defamatory statement was susceptible to an innocent construction, and that the *per se* counts must therefore be dismissed. *Mittleman v. Witous*, 135 Ill. 2d 220 (1989) (innocent construction rule is applicable only to *per se* actions, and not to *per quod* actions). Because these portions of the article did not appear in the complaint, the defendants attached a copy of the article as an exhibit to their motion to dismiss. The trial and appellate courts relied upon the defamatory article, in addition to the allegations in the plaintiff's

complaint, in dismissing the *per se* counts under the innocent construction rule.

By presenting and relying upon affirmative matters outside the pleadings, the defendants and the lower courts disregarded the proper use of a section 2—615 motion. We therefore conclude that the portion of the defendants' motion that seeks the dismissal of the *per se* counts under the innocent construction rule cannot properly be considered a section 2—615 motion. Rather, we will consider that part of the motion as having been filed and decided under section 2—619 (735 ILCS 5/2—619(a)(9) (West 1992)). *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 134 (1986) (where plaintiff failed to attach league bylaws as an exhibit to his complaint, defendants properly submitted the documents in support of a section 2—619(a)(9) motion to dismiss); *Cartwright v. Garrison*, 113 Ill. App. 3d 536, 540 (1983) (in a defamation action, the question of whether the allegedly defamatory language is rendered nonactionable *per se* by reason of the innocent construction rule may properly be considered in a section 2—619 motion to dismiss); *Kilbane v. Sabonjian*, 38 Ill. App. 3d 172 (1976) (same); see also 4 R. Michael, Illinois Practice § 41.7, at 332 (1989).

Having addressed this procedural irregularity, we next consider the defendants' two arguments that the *per se* counts were properly dismissed because the allegedly defamatory statement is reasonably susceptible to an innocent construction.

### 2. Innocent Construction of "Slut"

The defendants first claim that the assertion that Bryson is a "slut" is not actionable *per se* because the word "slut" may reasonably be innocently construed as describing Bryson as a "bully." They note that the American Heritage Dictionary includes a number of different definitions for the word "slut," including "a

slovenly, dirty woman," "a woman of loose morals," "prostitute," "a bold, brazen girl," or "a female dog." American Heritage Dictionary 1153 (2d Coll. ed. 1985). They argue that, because "a bold, brazen girl" may be considered synonymous with "bully," the court must innocently construe the word "slut."

The defendants apparently believe that the innocent construction rule applies whenever a word has more than one dictionary definition, one of which is not defamatory. The innocent construction rule does not apply, however, simply because allegedly defamatory words are "capable" of an innocent construction. See *Chapski*, 92 Ill. 2d at 351-52 (modifying the innocent construction rule announced in *John v. Tribune Co.*, 24 Ill. 2d 437, 442 (1962)). In applying the innocent construction rule, courts must give the allegedly defamatory words their natural and obvious meaning. *Chapski*, 92 Ill. 2d at 351-52; 33A Ill. L. & Prac. *Slander & Libel* § 12 (1970). Courts must therefore interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader. 33A Ill. L. & Prac. *Slander & Libel* § 12, at 25 (1970). When a defamatory meaning was clearly intended and conveyed, this court will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibellous under the innocent construction rule.

Here, we need not determine whether the word "slut" always implies unchastity or is always defamatory. When we consider the allegedly defamatory language in context, and give the words and implications their natural and obvious meaning, it is evident that the word "slut" was intended to describe Bryson's sexual proclivities. Immediately preceding the sentence in which Bryson is called a "slut," the author describes

an incident that occurred two months earlier. The author states that Bryson appeared at a bonfire with "two guys that nobody knew. One had a tattoo, and they were all drinking. Lots. Who knows what guys like that made Bryson do." The sexual implication underlying the use of "slut" is intensified with the commentary, "Who knows what guys like that made Bryson do." The defendants suggest that this latter statement did not necessarily have sexual undertones, since the author could have been implying that the two men made Bryson engage in conduct of a nonsexual nature, such as shoplifting. The defendants basically ask this court to construe the words used, not in the plain and popular sense in which they are naturally understood, but in their best possible sense.

The innocent construction rule, however, does not require courts to strain to find an unnatural but possibly innocent meaning for words where the defamatory meaning is far more reasonable. *Chapski*, 92 Ill. 2d at 350-51. Nor does it require this court to espouse a naïveté unwarranted under the circumstances. Reading the words in the context presented, and giving the words their "natural and obvious" meaning, it is obvious that the word "slut" was used to describe Bryson's sexual proclivities. See *Tonsmeire v. Tonsmeire*, 281 Ala. 102, 106, 199 So. 2d 645, 648 (1967) (statement that the plaintiff "had two affairs" could not be innocently construed as referring to platonic associations; statement charged the plaintiff with unchastity and was libelous *per se*); *Jordan v. Lewis*, 20 A.D.2d 773, 774, 247 N.Y.S.2d 650, 653 (1964) (stating that the plaintiff "slept with his secretary" is not susceptible of an innocent construction and, as ordinarily used, charges the plaintiff with sexual promiscuity). Accordingly, we reject the defendant's contention that the defamatory language at issue must be innocently construed as a matter of law.

The defendants finally note that our appellate court has held that it is not defamatory *per se* to call a woman a slut. *Roby v. Murphy*, 27 Ill. App. 394 (1888). We note initially that *Roby* is an 1888 appellate court decision. Appellate court decisions issued prior to 1935 had no binding authority. *Chicago Title & Trust Co. v. Vance*, 175 Ill. App. 3d 600, 606 (1988). We also conclude that *Roby* is not persuasive for another reason as well.

*Roby* was decided more than 100 years ago. It is evident that neither the law of defamation nor our use of language has remained stagnant for the last century. Terms that had innocuous or only nondefamatory meanings in 1888 may be considered defamatory today. See, *e.g.*, *Moricoli v. Schwartz*, 46 Ill. App. 3d 481 (1977) (rejecting the defendant's claim that the term "fag" should be innocently construed, because the dictionary definitions for that term included "cigarette" and "to become weary"; stating that the plaintiff "is a fag" amounted to a charge that the plaintiff was homosexual); *Manale v. City of New Orleans*, 673 F.2d 122 (5th Cir. 1982) (referring to the plaintiff, a fellow police officer, as "a little fruit" and "gay" falsely charged the plaintiff with homosexuality and was defamatory *per se*); *Tonsmeire v. Tonsmeire*, 281 Ala. 102, 199 So. 2d 645 (1967) ("affair" is commonly understood to mean unchastity rather than a platonic association).

At the time *Roby* was decided, Webster's dictionary defined the term "slut" as "an untidy woman," "a slattern" or "a female dog," and stated that the term was "the same as 'bitch.' " *Roby*, 27 Ill. App. at 398. Apparently, when *Roby* was decided, none of the dictionary definitions of "slut" implied sexual promiscuity. Moreover, the *Roby* court found that, even in its "common acceptance," the term "slut" did not amount to a charge of unchastity. *Roby*, 27 Ill. App. at 398.

We cannot simply assume that the term "slut"

means the same thing today as it did a century ago. Many modern dictionaries include the definitions of the term "slut" cited in *Roby*, but add new definitions that imply sexual promiscuity. See, *e.g.*, Webster's New World Dictionary (2d Coll. ed. 1975) ("a sexually immoral woman"); American Heritage Dictionary 1153 (2d Coll. ed. 1985) ("[a] woman of loose morals" "prostitute"). Moreover, in the present age, the term "slut" is commonly used and understood to refer to sexual promiscuity. See *Smith v. Atkins*, 622 So. 2d 795 (La. App. 1993) (law professor called a female student a "slut" in class; appellate court found that term was libelous *per se*). Thus, for this additional reason, we find *Roby* to be of no value here.

### 3. Identity of Bryson as the Plaintiff

The defendants next argue that the innocent construction rule must apply in this case because the article may reasonably be construed as referring to someone other than the plaintiff. The defendants note that the complaint does not allege any facts to demonstrate that third persons would reasonably conclude that the character "Bryson" is the plaintiff, Kimberly Bryson. The defendants argue that, under Illinois law, where an allegedly defamatory statement does not mention the plaintiff by name, the plaintiff must plead extrinsic facts to demonstrate that third persons believed that the libelous statement referred to the plaintiff. *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388 (1995); *Homerin v. Mid-Illinois Newspapers*, 245 Ill. App. 3d 402 (1993); *Moore v. Streit*, 181 Ill. App. 3d 587, 597-98 (1989); *Voris v. Street & Smith Publications*, 330 Ill. App. 409 (1947).

We agree with the general proposition that, where a libelous article *does not name the plaintiff*, it should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the article was about the plaintiff

and that the allegedly libelous expression related to her. See 33A Ill. L. & Prac. *Slander & Libel* §§ 93, 13, at 97, 28-29 (1970); *Coffey v. MacKay*, 2 Ill. App. 3d 802, 807 (1972). Neither this principle nor the cases upon which the defendants rely, however, apply here.

The article at issue did, of course, use the plaintiff's last name. The name "Bryson" is not so common that we must find, as a matter of law, that no reasonable person would believe that the article was about the plaintiff. The cases that the defendants cite all involve circumstances in which the allegedly libelous article or statement *did not use the plaintiff's name.* In *Voris*, the defamatory article referred only to a person named "Snapper Charlie." *Voris*, 330 Ill. App. 409. *Homerin* involved a political cartoon that supposedly depicted the plaintiff's likeness, but did not identify him by name. *Homerin*, 245 Ill. App. 3d 402. *Barry Harlem Corp.* likewise involved an article that did not mention the plaintiff by name. *Barry Harlem Corp.*, 273 Ill. App. 3d 388. Under the present facts, we reject the defendants' claim that the story must be innocently construed as referring to someone other than the plaintiff.

The defendants also argue that the article may be construed as not referring to the plaintiff simply because the story is labeled "fiction" and, therefore, does not purport to describe any real person. We are not persuaded by this contention. In her complaint, plaintiff Bryson claims that she is the character "Bryson" depicted in the defamatory story. The fact that the author used the plaintiff's actual name makes it reasonable that third persons would interpret the story as referring to the plaintiff, despite the fictional label. In addition, the setting of the story, the events described therein, and the identification of the writer as a native of southern Illinois all lead to a reasonable conclusion that third persons familiar with both the plaintiff and

the defendant would understand the story as referring to the plaintiff.

In this regard, we note that, when addressing the defendant's section 2—619 motion to dismiss the *per se* counts under the innocent construction rule, the trial court should have considered the plaintiff's responses to interrogatories, which were contained in the record. Section 2—619(c) provides that, if the party opposing a section 2—619 motion to dismiss presents "affidavits or other proof *** establishing facts obviating the grounds of defect," the court may consider the same in granting or denying the motion. 735 ILCS 5/2—619(c) (West 1992). An interrogatory answer is considered equivalent to an affidavit for purposes of a section 2—619 motion to dismiss. See 134 Ill. 2d Rs. 213(f), 212(a)(4). The facts stated in the plaintiff's answers to the defendant's interrogatories were therefore before the trial court for its consideration when it ruled on the defendant's motion to dismiss. *Sierens v. Clausen*, 60 Ill. 2d 585, 588 (1975). One of the interrogatories propounded by the defendants asked the plaintiff to identify why she believed that she was the character described in the story. The plaintiff's response identified more than 25 alleged similarities between herself and the physical attributes, locations and events attributed to the character "Bryson" in the story. Had the trial court considered this interrogatory answer, it certainly would have rejected the defendants' claim that the article must be innocently construed as referring to someone other than the plaintiff. Under the circumstances, we conclude that the plaintiff should be allowed the opportunity to prove that, despite the fictional label, the character "Bryson" bears such a close resemblance to the plaintiff that reasonable persons would understand that the character was actually intended to portray the plaintiff. Whether the article was actually understood by third parties to be about the

plaintiff is, of course, a question of fact for the jury. *Chapski*, 92 Ill. 2d at 352.

### C. *First Amendment*

The defendants finally claim that, even if the statements may be considered actionable *per se* and are not susceptible to an innocent construction, they are nevertheless expressions of opinion, protected under the first amendment to the United States Constitution. U.S. Const., amend. I.

Prior to 1990, this court and others perceived a fundamental distinction between statements of fact and statements of opinion for first amendment purposes. Statements of opinion were held to be protected by the first amendment and not actionable in a defamation action. *Owen v. Carr*, 113 Ill. 2d 273 (1986); *Mittleman v. Witous*, 135 Ill. 2d 220 (1989). This rule was grounded primarily on *dictum* contained in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3006-07 (1974): "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."

Recently, however, the United States Supreme Court reexamined the law of defamation within the context of the first amendment and rejected what it called "the creation of an artificial dichotomy between 'opinion' and fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 111 L. Ed. 2d 1, 18, 110 S. Ct. 2695, 2706 (1990). The Court explained that the *dictum* in *Gertz* had been interpreted too broadly and was not intended to create a "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich*, 497 U.S. at 18, 111 L. Ed. 2d at 17, 110 S. Ct. at 2705. The Court held that there is no *separate* first amendment privilege for statements of opinion and that a false assertion of fact

can be libelous even though couched in terms of an opinion. *Milkovich*, 497 U.S. at 18, 111 L. Ed. 2d at 17-18, 110 S. Ct. at 2706 (simply couching the statement "Jones is a liar" in terms of opinion—"In my opinion Jones is a liar"—does not dispel the factual implications contained in the statement).

Thus, the test to determine whether a defamatory statement is constitutionally protected is a restrictive one. Under *Milkovich*, a statement is constitutionally protected under the first amendment only if it cannot be "reasonably interpreted as stating actual facts." *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706; see, *e.g., Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 57, 99 L. Ed. 2d 41, 48, 53, 108 S. Ct. 876, 879, 883 (1988) (parody); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284-86, 41 L. Ed. 2d 745, 761-63, 94 S. Ct. 2770, 2781-82 (1974) (hyperbole and imaginative expression); *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 13-14, 26 L. Ed. 2d 6, 14-15, 90 S. Ct. 1537, 1541-42 (1970) (hyperbole and imaginative expression).

In applying this test we first consider whether a reasonable fact finder could conclude that the allegedly defamatory statement, *i.e.,* that Bryson was a "slut," was an assertion of fact. *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706. We answer this question in the affirmative. The clear impact of the statement was that Bryson was, in fact, sexually promiscuous. This was not the sort of loose, figurative or hyperbolic language that would negate the impression that the writer was seriously maintaining that the character depicted in the story was unchaste. The assertion is sufficiently factual to be susceptible to being proven true or false. *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706. Whether the statement was *actually* true or false is a question of fact for the jury. We simply

hold, as a matter of law, that the allegation of sexual promiscuity in this case contains a provably false factual assertion. Thus, we do not find that the allegedly defamatory statement here was constitutionally protected under the first amendment. *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706.

The defendants argue, however, that the defamatory statement cannot be reasonably interpreted as stating actual facts about the plaintiff because the story was clearly labeled "fiction." The test is not whether the story is or is not characterized as "fiction," or "humor," but whether the charged portions, in context, could be reasonably understood as describing actual facts about the plaintiff or actual events in which she participated. *Kolegas*, 154 Ill. 2d at 16. The cases upon which the defendants rely in this regard are easily distinguished from the present case. For instance, in *Flip Side, Inc. v. Chicago Tribune Co.*, 206 Ill. App. 3d 641 (1991), the plaintiff, Flip Side Corporation, claimed that it was defamed by events described in a Dick Tracy comic strip. The appellate court reviewed the comic series and found that the persons and events described therein were so fantastic that no reasonable person would believe that they stated actual facts or described actual events. The court noted that the characters' names (*i.e.*, A.M. and F.M. Stereo, Themesong, Flipside, Victor Promomo, and Sam Catchem) and the events described (*e.g.*, murders perpetrated by means of a black box that emits high frequency sound waves that destroy the inner ear, causing convulsions and death by heart attack) were so fanciful that no one would interpret the comic strip as describing actual people and events. *Flip Side, Inc.*, 206 Ill. App. 3d at 655. The court noted that the fact that the episode appeared only on pages of the newspaper devoted solely to comic strips fortified its conclusion that the characters and events were not intended to depict actual persons and events.

Here, although the story *Bryson* is labeled as fiction, the story itself is not so fanciful or ridiculous that no reasonable person would interpret it as describing actual persons or events. Compare *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 57, 99 L. Ed. 2d 41, 48, 53, 108 S. Ct. 878, 879, 883 (1988) (jury concluded that Hustler ad parody could not reasonably be understood as describing actual facts about Falwell or actual events in which he participated). On the contrary, the story here portrays realistic characters responding in a realistic manner to realistic events. A reasonable reader could logically conclude that the author of the story had drawn upon her own experiences as a teenager when writing the story. Under the circumstances, we must reject the defendants' claim that the story *cannot* reasonably be interpreted as stating actual facts simply because it is labeled fiction.

In sum, we hold that the allegations in the plaintiff's complaint are sufficient to state a cause of action for defamation *per se*. The statement in the article that Bryson was a "slut" falls within the class of statements deemed actionable *per se* under section 1 of the Libel and Slander Act, because it amounted to a charge of fornication. Moreover, we are not persuaded that there is a reasonable innocent construction for the statement that would remove it from the actionable *per se* category. Finally, we conclude that the statement may reasonably be interpreted as stating an actual fact and therefore falls outside the protection of the first amendment. Accordingly, we reverse the trial court's dismissal of counts I and II of the complaint.

## II. Defamation *Per Quod*

We next consider whether the trial court properly dismissed counts III and IV of the plaintiff's complaint, which attempt to state a cause of action for defamation *per quod*. The allegations in counts III and IV of the

complaint are identical to those found in counts I and II, except that the plaintiff has alleged that she sustained pecuniary loss ("special damages") as a result of the defendant's publication of the allegedly defamatory statements. The defendants argue that the trial court properly dismissed these *per quod* counts because they failed to allege any extrinsic facts to show that the statements are defamatory in character. We disagree.

A cause of action for defamation *per quod* may be brought in two circumstances. First, a *per quod* claim is appropriate where the defamatory character of the statement is not apparent on its face, and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning. To pursue a *per quod* action in such circumstances, a plaintiff must plead and prove extrinsic facts to explain the defamatory meaning of the statement. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1 (1992); *Mittleman v. Witous*, 135 Ill. 2d 220, 233 (1989).

A *per quod* action is also appropriate, however, where a statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*. See *Mitchell v. Peoria Journal-Star, Inc.*, 76 Ill. App. 2d 154, 158-60 (1966). In such *per quod* actions, the plaintiff need not plead extrinsic facts, because the defamatory character of the statement is apparent on its face and resort to additional facts to discern its defamatory meaning is unnecessary. The action is one for defamation *per quod* simply because the statement does not fall into one of the actionable *per se* categories. In other words, the statement is defamatory on its face, but damage to the plaintiff's reputation will not be presumed. See *Mitchell v. Peoria Journal-Star, Inc.*, 76 Ill. App. 2d 154, 158-60 (1966). As with any defamation *per quod* action, the plaintiff must plead and prove special damages to recover.

Counts III and IV of the plaintiff's complaint at-

tempt to assert this second type of *per quod* action. The plaintiff claims that the statement that Bryson is a "slut" is defamatory *on its face*. Thus, the fact that the plaintiff failed to plead extrinsic facts to explain the defamatory character of the statement is not an adequate or appropriate basis for dismissing counts III and IV. The trial court improperly dismissed them on that ground.

The defendants alternatively argue that counts III and IV were properly dismissed because the plaintiff failed to adequately allege special damages. In any defamation *per quod* action, the plaintiff must plead and prove actual damage to her reputation and pecuniary loss resulting from the defamatory statement ("special damages") to recover. As stated above, we have found that the statement that Bryson is a "slut" falls within the class of statements deemed actionable *per se* under the Libel and Slander Act, because it amounted to a charge of fornication. Because the defamatory statement is actionable *per se*, the plaintiff need not plead or prove special damages to establish a cause of action for defamation. Counts III and IV, which simply restate the allegations found in counts I and II of the complaint, are therefore redundant and unnecessary. We therefore affirm the dismissal of those counts, with the modification that the dismissal is without prejudice.

### III. False Light Counts

We next consider whether counts V and VI of the plaintiff's complaint, which attempt to state a cause of action for false light, were properly dismissed. As previously noted, the defendants filed a section 2—619 motion to dismiss those counts on the ground that they were barred by the applicable statute of limitation. The trial court granted the defendants' motion, relying upon the appellate court decision in *Starnes v. International Harvester Co.*, 184 Ill. App. 3d 199 (1989). The appellate

court affirmed the dismissal of counts V and VI, quoting *Starnes*, 184 Ill. App. 3d at 206, for the proposition that "[a]n amendment asserting new causes of action will not be permitted after the statute of limitations has run."

The limitations period for invasion of privacy claims and for defamation claims is one year after the cause of action accrues. 735 ILCS 5/13—201 (West 1992). Here, the cause of action accrued in March 1991, when the article *Bryson* was published in Seventeen magazine. As previously noted, the plaintiff filed her original complaint in the United States district court on August 6, 1991. That action was dismissed for lack of diversity jurisdiction in June 1992.

The plaintiff refiled her action in the circuit court of St. Clair County in June 1992, pursuant to section 13—217 of the Limitations Act (735 ILCS 5/13—217 (West 1992)). That section provides:

> "In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if *** the action is dismissed by a United States District Court for lack of jurisdiction, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after *** the action is dismissed by a United States District Court for lack of jurisdiction." 735 ILCS 5/13—217 (West 1992).

Section 13—217 gave the plaintiff an absolute right to refile the same cause of action in the circuit court after that action was dismissed in the federal district court for lack of diversity jurisdiction. See *Gonzalez v. Thorek Hospital & Medical Center*, 143 Ill. 2d 28, 30-31 (1991); *Flores v. Dugan*, 91 Ill. 2d 108 (1982). As stated, the plaintiff filed a complaint in the circuit court of St. Clair County immediately after the federal action was dismissed.

In September 1993, the plaintiff filed an amended complaint, which added two counts for false light/invasion of privacy. The plaintiff argues that the amendment, which was filed after the limitations period expired, relates back to the original complaint, which was timely filed in the federal court. Under section 2—616(b) of the Code of Civil Procedure (735 ILCS 5/2—616(b) (West 1992)), a cause of action alleged in an amended complaint, filed after the expiration of the limitations period, will relate back to the filing of the original complaint if two requirements are met: (1) the original pleading was timely filed and (2) the original and amended pleadings indicate that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading. *Wolf v. Meister-Neiberg, Inc.*, 143 Ill. 2d 44 (1991); *Zeh v. Wheeler*, 111 Ill. 2d 266 (1986). The lower courts apparently found that neither of these requirements was met in the instant case. We disagree and find that both requirements for invoking section 2—616(b) are met here.

The defendants concede in their brief that the original pleading was timely filed in the federal court within the one-year limitation period. The defendants do not argue that section 2—616(b) does not apply simply because the original action was dismissed by the federal court and refiled in the circuit court pursuant to section 13—217. We would reject such an argument even if the defendants had raised it. *Frankenthal v. Grand Trunk Western R.R. Co.*, 120 Ill. App. 3d 409, 417 (1983). Both section 13—217 and section 2—616(b) are remedial in nature and should be liberally construed in favor of hearing the plaintiff's claim. *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038 (1995); *Frankenthal v. Grand Trunk Western R.R. Co.*, 120 Ill. App. 3d 409, 417 (1983). Both provisions were enacted to facilitate the disposition of

litigation upon the merits and to protect plaintiffs from losing a cause of action because of a technical default unrelated to the merits. See *Zeh v. Wheeler*, 111 Ill. 2d 266 (1986); *Gendek v. Jehangir*, 119 Ill. 2d 338, 343 (1988); *Wolf v. Meister-Neiberg, Inc.*, 143 Ill. 2d 44 (1991); *American National Bank & Trust Co. v. Dozoryst*, 256 Ill. App. 3d 674 (1993). Where the original action was timely filed, the plaintiff should not be penalized simply for availing herself of the provisions of sections 13—217. We therefore conclude that the first requirement for invoking section 2—616(b) is met here.

The second requirement is likewise satisfied. The cause of action for false light asserted in counts V and VI of the second-amended complaint clearly "grew out of the same transaction or occurrence set up in the original pleading." 735 ILCS 5/2—616(b) (1992). The false light counts are based upon the same publication that formed the basis of the defamation claims raised in the original complaint. Counts V and VI allege that the *Bryson* article "placed the Plaintiff in a false light in the public eye in that it said that she was a 'slut' and implied that she was of 'unchaste moral character.' " The counts further allege that the false light mentioned "is something that is objectionable to a reasonable person under the circumstances."

The defendants were thus clearly made aware, within the limitations period, of the relevant facts underlying the false light claim and were afforded sufficient opportunity to investigate the circumstances upon which the plaintiff was attempting to impose liability. *Wolf v. Meister-Neiberg, Inc.*, 143 Ill. 2d 44 (1991); *Zeh v. Wheeler*, 111 Ill. 2d 266 (1986). In fact, the original complaint supplied the defendant with all of the information necessary to prepare a defense to the subsequently asserted false light claim. Where the original complaint put the defendants on notice of the disputed

transaction and occurrence, and the amendment arises out of that same transaction or occurrence, the purposes of section 2—616(b) are fulfilled. Because the defendants had notice of litigation arising out of the same facts and circumstances within the limitations period, the rationale for extending the limitations period pursuant to section 13—217 is likewise fulfilled. *Gonzalez v. Thorek Hospital & Medical Center*, 143 Ill. 2d 28, 36-37 (1991). We hold that the amendment to the pleadings relates back to the original filing pursuant to section 2—616(b), even though the original pleading was dismissed and re-filed in accordance with section 13—217.

The lower courts determined that the amendment was barred by the statute of limitations simply because it alleged a new cause of action. This conclusion was in error. In *Zeh v. Wheeler*, 111 Ill. 2d 266 (1986), this court explained that the test for whether an amended complaint relates back under section 2—616(b) to the original pleading for statute of limitations purposes does not depend on whether the amended complaint asserts the "same cause of action" pleaded in the original complaint. Instead, the focus is on the identity of the transaction or occurrence. *Zeh*, 111 Ill. 2d at 272-73. Under the "same transaction or occurrence" standard, the focus is on the facts and occurrence alleged in the original complaint, not the name of the cause of action or legal theory used to support the claim for damages. Thus, those decisions which impose a "same cause of action" or "substantially similar cause of action" requirement on amended complaints are inconsistent with *Zeh*. See, *e.g.*, *Starnes*, 184 Ill. App. 3d at 206 ("An amendment asserting new causes of action will not be permitted after the statute of limitations has run"); *Beam v. Erven*, 133 Ill. App. 2d 193, 199 (1971) (same). The trial and appellate courts erroneously relied upon those decisions in dismissing counts V and VI of the plaintiff's

complaint. See *Weber v. Cueto*, 253 Ill. App. 3d 509, 515-16 (1995). Accordingly, we hold that counts V and VI of the second-amended complaint relate back to the original complaint and that the trial court erred in granting the defendants' section 2—619 motion to dismiss those counts. The defendants raise additional challenges to the sufficiency of counts V and VI which were not raised in the trial court. In the interest of fairness to the plaintiff, we conclude that those challenges should be raised and addressed in the trial court on remand.

### IV. Punitive Damages

The plaintiff finally argues that her punitive damage claims were improperly dismissed. Counts I, II, V and VI of the plaintiff's complaint seek punitive damages. In support of a punitive damage award, the plaintiff's complaint alleges that the defendants published a defamatory statement or permitted a false statement to appear through malice or actual negligence.

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), the United States Supreme Court held that the first amendment prohibits awards of presumed and punitive damages for false and defamatory statements unless the plaintiff shows actual malice. The Supreme Court subsequently limited the scope of *Gertz*, however, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761, 86 L. Ed. 2d 593, 604, 105 S. Ct. 2939, 2946 (1985), where the Court held that the first amendment of the federal Constitution does not bar states from awarding private individuals presumed and punitive damages in a defamation action upon a showing of less than actual malice where the statements in question do not involve matters of public concern. See also *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774-75, 89 L. Ed. 2d 783, 791, 106 S. Ct. 1558, 1562-63 (1986); *Owens v. CBS, Inc.*, 173 Ill.

App. 3d 977, 996 (1988); *Beasley v. St. Mary's Hospital,* 200 Ill. App. 3d 1024 (1994).

This court has not yet considered whether, as a matter of state law, punitive damages may be awarded in a defamation action absent a showing of actual malice. We decline to address the question in this appeal, however, because neither party has raised or briefed it. Rather, both the plaintiff and the defendants assume that punitive damages may be awarded in this case only upon a showing of actual malice. They disagree only with respect to whether the plaintiff's complaint adequately alleges actual malice.

The trial and appellate courts dismissed the punitive damage claims, finding that the complaint failed to set forth sufficient factual allegations from which actual malice may be said to exist. We disagree. A complaint must be liberally construed, to the end that controversies may be quickly and finally determined according to the substantive rights of the parties. 735 ILCS 5/1—106 (West 1992). Accordingly, it has been held that a plaintiff need not plead facts with precision when the information needed to plead those facts is within the knowledge and control of the defendant rather than the plaintiff. *Stap v. Chicago Aces Tennis Team, Inc.,* 63 Ill. App. 3d 23 (1978); *Coffey v. MacKay,* 2 Ill. App. 3d 802 (1972); 3 R. Michael, Illinois Practice § 23.4, at 310 (1989). This rule assists plaintiffs who may be unable to discover the information needed to draft a detailed complaint before bringing an action. *Holton v. Resurrection Hospital,* 88 Ill. App. 3d 655 (1980). This rule also recognizes that, where the defendants have most of the pertinent information in their possession, they do not have to rely primarily on the facts stated in the complaint to formulate an answer and prepare for trial, since they can easily determine the specific details for themselves. *Holton v. Resurrection Hospital,* 88 Ill. App.

3d 655 (1980). Accordingly, in such cases, the plaintiff can state the material facts in the complaint with less specificity than would normally be required. *Holton v. Resurrection Hospital*, 88 Ill. App. 3d 655 (1980).

In the instant case, the facts and information necessary to support the claim of actual malice are within the knowledge and control of the defendants. What motivated defendant Logsdon to assert that the plaintiff was a "slut" and what precautions defendant Seventeen magazine undertook before publishing that assertion are details that the defendants can easily discern for themselves without relying on the plaintiff's complaint. The plaintiff cannot know or allege with particularity facts that are solely within the minds of the defendants. Although the allegation of malice here was less than ideal, the information needed to support or overcome that allegation is within the defendants' control. The defendants cannot realistically claim that the lack of factual detail hinders their ability to prepare an answer or a defense for trial. Accordingly, we hold that the facts alleged in the plaintiff's complaint are sufficiently specific to meet the requirements of law in the circumstances of this case. See *Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483 (1981) (where complaint alleged fraudulent misrepresentation by a real estate broker, allegation that defendant acted intentionally with reckless disregard for the truth was sufficient); *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (1979). Under the circumstances, we conclude that the plaintiff's punitive damage claims were improperly dismissed.

## CONCLUSION

For the reasons stated, the judgments of the trial and appellate courts are reversed in part and affirmed in part. Those portions of the appellate court's judgment that affirmed the trial court's dismissal of counts I, II, V and VI of the plaintiff's second-amended com-

plaint and the dismissal of the claims for punitive damages are reversed and those counts are reinstated. Those portions of the appellate court's judgment that affirmed the dismissal of counts III and IV of the complaint are affirmed, with the modification that the dismissal is without prejudice. This cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

JUSTICE McMORROW, dissenting:

This is an important case in the field of defamation and libel law. I believe that the majority's decision turns defamation law on its head. Today's decision has serious ramifications with respect to our first amendment right of free speech, for it may pave the way for frivolous lawsuits whenever something caustic is written, even in a fictional story. I do not believe that is the purpose of our defamation law.

The plaintiff in this cause is not a public figure or well known for any other reason. She does not allege or claim to be known or publicly recognizable for any reason. She is a domiciliary of Gallatin County, located in southern Illinois. Without even attaching a copy of the allegedly defamatory article to her complaint, the plaintiff claims that she was defamed by a fictional article in Seventeen magazine, which is published and widely distributed nationally. She alleged in her complaint that the fictional article referred to a character named Bryson (which is not plaintiff's full name) in the article as being a slut. She claims that the fictitious character in the article was intended to portray her,

and that she was defamed because the article referred to the fictitious Bryson as a slut.

Nowhere in the complaint does plaintiff establish her identity as the fictitious Bryson. It is only in her answer to interrogatories that plaintiff claims 25 similarities between the fictitious Bryson and herself. None of the similarities are unique or conclusive. For example, the author of the story describes the Bryson character as a "Brass Blonde" and a "Platinum Blonde." According to plaintiff, "her mother owned a beauty salon" and she and "her friend, Susie Patton[,] were always changing their hair color." Plaintiff also refers to one incident in the story wherein another character, Anita, is grounded for refusing to tell her father what she had done with his Willie Nelson tapes. Plaintiff claims that she had a friend named Anita, and that Anita's brother was named Nelson. In my opinion, these are not similarities which establish the identity of plaintiff as the Bryson in the fictional story.

Plaintiff did not allege any special damages in her complaint. She must, under the law, allege special damages in order to successfully prosecute her claim for defamation *per quod*. *Schaffer v. Zekman*, 196 Ill. App. 3d 727 (1990). Indeed, plaintiff's answers to interrogatories reveal that she had not been employed for four years prior to the publication of the article. Further, plaintiff's answers did not indicate that she was refused employment after the publication of the article.

I disagree, then, with the majority's decision to reinstate plaintiff's claim for libel *per se*. In my view, the majority fails to properly consider the full impact of the innocent construction rule under the circumstances of this case. Contrary to the majority, I do not believe that the author's use of the word "slut" in describing one of her characters is the equivalent of charging plaintiff with "having been guilty of fornication." 740 ILCS 145/1

(West 1992). In addition, I also believe that the majority errs in relying on facts not found within the article itself in order to reinstate plaintiff's claim for libel *per se*. For these reasons, I respectfully but strongly dissent.

## I

The innocent construction rule provides that an allegedly defamatory statement is not actionable *per se* if it is reasonably capable of an innocent construction. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 11 (1992). This rule "requires courts to consider a written or oral statement in context, giving the words and implications therefrom their natural and obvious meaning." *Kolegas*, 154 Ill. 2d at 11. The focus of the rule is on whether the statement, when so considered, "may reasonably be innocently interpreted." *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982). That determination is a question of law for the court to decide. *Chapski*, 92 Ill. 2d at 352.

In this case, the majority holds that the word "slut" is not susceptible to an innocent construction. 174 Ill. 2d at 92-96. The majority reaches this holding by noting the pejorative evolution of the word "slut." In today's parlance, the majority posits, the word "slut" connotes sexual promiscuity. Therefore, when viewed in context, "it is evident that the word 'slut' was intended to describe [plaintiff's] sexual proclivities." 174 Ill. 2d at 93. From this reasoning, the majority concludes that the article in question comes within the purview of the Illinois Slander and Libel Act. 740 ILCS 145/1 (West 1992) (making charges of fornication actionable).

In my opinion, the majority's holding not only fails to give due regard to the various meanings of the word "slut," but also fails to fully appreciate the context in which it was expressed. I address each of these points in turn.

As a general rule, it is not actionable to call a woman a "slut" unless the word is used in such a man-

ner as to impute whoredom. See 53 C.J.S. *Libel & Slander* § 26 (1977) (cases cited therein); 13 A.L.R.3d 1286 (1967) (cases cited therein). This rule recognizes that the word itself does not always impute a breach of chastity, but carries with it such nonactionable connotations as brazen or shameless. Indeed, as defendants point out, and the majority concedes, the American Heritage Dictionary contains several definitions of the word "slut," such as a "slovenly, dirty woman," "a woman of loose morals," a "prostitute," "a bold, brazen girl," or "a female dog." 174 Ill. 2d at 92-93. See also Webster's Third New International Dictionary 2148 (1986). Consequently, because the word has many different meanings, most of which are not defamatory *per se*, context is crucial; for as noted above, if a word "may reasonably be innocently interpreted," it is not actionable *per se. Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982).

We then, as the court, must consider how the word "slut" was used in the context of this article in order to determine whether the author intended to characterize the fictitious Bryson as a fornicator, or merely as an overbearing high school bully. In my view, this can only be done by considering the story in the context in which the word was used, something which the majority does not do.

In the story, the Bryson character is introduced as a "platinum-blond, blue-eye-shadowed, faded-blue-jeaned, black-polyester-topped shriek" who is once again "after" the unnamed narrator. Both characters are in high school, although their mutual dislike has spanned several years. As the narrator relates, "We've never been friends. But she's tracked my life since fifth grade, when I climbed on the school bus whose new route added my country stop to her section of town. Two grades ahead, she spent the next four years pelting spitballs at me until she got her driver's license."

Returning to the present, the narrator relates that during one particular week Bryson had been slamming lockers, cutting classes and dropping water balloons. The narrator, bemoaning the fact that "[i]t was only a matter of time before her attention swung my way," proceeds to describe the following scene, which takes place in the high school restroom in the presence of another girl, Sue Barton:

"I heard a voice behind me like I've heard a million times, in a high-pitched, brassy voice, 'Well look who's here.' Bryson had just walked in. Without turning around I knew she was talking straight to me. 'You usually got cigarettes.' ***

'Not today.'

'Not today?' Bryson looked at Sue ... and didn't say anything. Good. If she wasn't saying anything, she wasn't looking for a scene. I put my comb in my bag and edged for the door.

'Hey, I *was talking* to you.' She placed one arm on the wall's peeling green paint. *** Then, instead of doing what I'd always done—what I've learned was the only thing to do—stand there, quiet, looking at my feet until her attention went somewhere else, I walked straight up to her arm, put my hands together in a sort of hammer, and knocked it down. *** Then she smiled and said, 'So meet me by the baseball field after school today then.' "

Later that morning, the narrator telephoned her friend Anita who was sick at home. Anita cautioned, "You can't fight her. She broke Beth Harper's two front teeth." Then, the narrator states:

"About two months ago Bryson was at a bonfire with these two guys that nobody knew. One had a tattoo, and they were all drinking. Lots. Who knows what guys like that made Bryson do. The next day she came into school with a black eye. Beth Harper looked at her too long, and Bryson slammed her up against a glass door and cracked her one clean in the mouth.

Later that afternoon, as Bryson shouted down the hallways like always, I remembered what a slut she was

and forgot about the sorriness I'd been holding onto for her."

The story eventually culminates with the fight between Bryson and the narrator.

In this case, the majority submits that the "sexual implication underlying the use of 'slut' is intensified with the commentary 'who knows what guys like that made Bryson do.' " 174 Ill. 2d at 94. I disagree. In my opinion, not only can the word "slut" as used here be construed in the nondefamatory sense connoting brazenness, it is the only way it can be construed. There is nothing lascivious or licentious in the word "slut" when used to describe the fictional Bryson's less than decorous or mannerly behavior. Indeed, Bryson's sexual drive is neither the focal point of the story, nor a digression.

The appellate court in this case correctly observed that the word "slut" was merely an opinion uttered "by a fictional character about another fictional character" in a story that "creat[ed] a small snapshot of time, one moment in the lives of two fictional adolescents where one calls the other a name because she 'shouted down the hallways like always.' " No. 5—94—0328, slip op. at 7 (unpublished order under Supreme Court Rule 23). Like the appellate court, I believe that "[a]lthough it may be true that this word has a coarse effect on the ear, its use does not create the prurient image plaintiff avers." No. 5—94—0328, slip op. at 7. On the contrary, the word "slut" in this context cannot be viewed as anything more than a literary embellishment intended to convey the brazen nature of a school yard bully. It is not, as the majority suggests, the functional equivalent of charging plaintiff with having engaged in fornication. Thus, if the author of the article did not intend to portray the fictitious Bryson as a fornicator, then she could not intend to characterize the plaintiff as one either. As a result, plaintiff cannot claim that the article in question is libelous *per se.*

In light of the above, I also wish to emphasize that I believe that courts should not espouse a "naïveté" when applying the innocent construction rule. 174 Ill. 2d at 94. However, courts should not be overly sensitive whenever a vulgar or depraved word is used. This is particularly true where the word is found in a work of fiction, where authors typically use colorful language to describe characters and events.

Because I believe that the word "slut" as used in this context is clearly capable of a nondefamatory construction, and because I also find that our defamation law is ill-served by the majority's decision, I cannot join in the majority's reinstatement of plaintiff's claim for libel *per se.*

## II

Defendants also contend that the statement in question cannot be defamatory *per se* because it does not mention the plaintiff by name, and therefore extrinsic facts must be pled to demonstrate that third persons reasonably understood that the statement referred to plaintiff. They add that the article was a work of fiction which did not purport to describe any actual person. I agree with defendants' arguments.

In rejecting these contentions, the majority points out that plaintiff "identified more than 25 alleged similarities between herself and the physical attributes, locations and events attributed to the character 'Bryson' in the story." 174 Ill. 2d at 98. The majority looks to these extrinsic, alleged similarities in order to bolster the connection between plaintiff and the fictional character. However, by relying on these alleged similarities, which are not found within the four corners of the allegedly libelous article, the majority contravenes established case law in this area.

If additional facts are required to show the identity of the allegedly defamed person, then the statement

cannot be said to be defamatory on its face. Our appellate court has repeatedly held that " 'the injurious character of the statement *** cannot be considered so obvious as to justify dispensing with proof of actual damages' [*i.e.*, the statement cannot be libelous *per se*] where additional explanation is required to establish a person's identification with the publication." *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 732-33 (1990) (holding that news broadcast which fell within several of the historical categories for *per se* defamation was not defamatory *per se* where plaintiff's identity was not shown on its face), quoting *Moore v. Streit*, 181 Ill. App. 3d 587, 598 (1989). See also *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388 (1995); *Colucci v. Chicago Crime Comm'n*, 31 Ill. App. 3d 802 (1975).

In this case, I find it ironic and improper that the majority relies on the very extrinsic facts (*i.e.*, the alleged similarities between plaintiff and the fictitious Bryson referred to in the article) that remove this case from *per se* defamation in order to reinstate plaintiff's claim for libel *per se*. Plaintiff cannot, on the one hand, rely on numerous facts not found within the article itself to show that she was the person intended to be defamed, and then, on the other hand, claim to have been libeled on the face of the article. That position, which the majority ultimately approves, is not only logically inconsistent, it is also legally unsound. For this additional reason, I submit that it is improper to reinstate plaintiff's claim for libel *per se*.

### III

Finally, the position I espouse in this dissent regarding plaintiff's claim for libel *per se* requires me to address the propriety of plaintiff's claim for libel *per quod*. As with any action for defamation *per quod*, the plaintiff here must plead special damages in order to recover. *Schaffer v. Zekman*, 196 Ill. App. 3d 727 (1990). A review

120

of plaintiff's complaint in the case at bar reveals that the allegations of special damages are factually insufficient and cannot withstand a motion to dismiss. Plaintiff summarily alleges that she suffered "pecuniary damages in that she lost business opportunities and/or lost employment as a result of the damage to her reputation." She does not, however, allege either the nature of the purported lost business opportunities or the circumstances surrounding the loss of her employment. Our courts have consistently viewed such general, boiler-plate allegations as insufficient to state a cause of action for defamation *per quod*. *Taradash v. Adelet/ Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318 (1993); see also *Heerey v. Berke*, 188 Ill. App. 3d 527, 532-33 (1989).

IV

For the foregoing reasons, I would affirm the order of the circuit court dismissing with prejudice those counts in the complaint seeking relief for libel *per se* and libel *per quod*. I respectfully dissent.