CHICAGO CITY DAY SCHOOL, Plaintiff-Appellant, v. ROMA WADE, a/k/a Roma Wehde, a/k/a Roma, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—96—3864

Opinion filed June 23, 1998.

Jerome H. Torshen, Robert J. Slobig, and James K. Genden, all of Torshen, Spreyer & Garmisa, Ltd., of Chicago, for appellant.

David P. Sanders, Barry Levenstam, and David A. Schwartz, all of Jenner & Block, of Chicago, for appellees.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Chicago City Day School (hereinafter School), brought suit against defendants, Roma Wade (a/k/a Roma Wehde), WLS, Inc., and Capital Cities/ABC, Inc., seeking to redress the harm to plaintiff caused by false and defamatory statements during a March 8, 1996, radio broadcast on WLS talk radio. Plaintiff filed a complaint alleging that Roma Wade's (hereinafter Roma's) statements were defamatory *per se*. Defendants moved to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)), which the circuit court granted on the grounds that the statements came under "the innocent construction rule." Plaintiff now appeals this judgment pursuant to Supreme Court Rule 303 (155 Ill. 2d R. 303).

For the reasons that follow, we affirm.

The pertinent facts are as follows. The School had purchased a coach house in 1984, which was located adjacent to the School's existing building. The coach house is a wooden structure and, as such, the City of Chicago ordinances prohibit using it as a classroom or as an area for children's events. On February 16, 1995, the Chicago fire department inspected the coach house upon the School's request and ordered the School to either repair or demolish it. Upon reinspection, the Chicago fire department advised the School to demolish the coach house. The School had decided not to repair the coach house, because the cost would exceed $300,000, which was not economically justifiable. The board believed it would be a violation of its fiduciary duties to spend the School's privately obtained funds for the repairs of a deteriorating coach house that could not even be used as classrooms for the children. Thereafter, the School applied for a permit to demolish the coach house, which the City of Chicago denied. This matter was litigated all the way to the Illinois Supreme Court, which ultimately granted the School's right to a demolition permit on March 6, 1996. The following day, despite the supreme court's order, the city sent police to attempt to stop the demolition, only to allow the School to proceed after an emergency trial court hearing.

On March 8, 1997, on her WLS morning radio talk show, Roma and her co-host were discussing the two Chicago newspapers' front-page coverage of the School's demolition of its 101-year-old coach house the previous day. Roma first set forth the following facts the newspapers had reported: (1) a city official (Luis Martinez) had authorized the issuance of the demolition permit; (2) the city was trying to save the coach house; (3) the mayor had instructed that the coach house not be demolished; and (4) the mayor was furious over the demolition. The broadcast consisted of a heated debate among Roma, her co-host, and callers to the show about whether the historic coach house should have been protected rather than destroyed. Roma had repeatedly opined that the coach house was a beautiful landmark building on an historic street and was extremely upset that the School had demolished it. Consequently, she made the following remarks over the air right after her co-host stated that it may have been Luis Martinez who authorized the permit:

> "Well, the first thing, if I were going to investigate this case—the first thing I would do is go check out all kinds of things about this Luis or anybody else who seems to have anything to do with this, because there were shenanigans. This is a very, very, very wealthy school. The kids who go to this school get dropped off in Jaguars and get dropped off in Mercedeses *** And man, I am telling you,

somebody in high places with lots of money, something is going on here, and the Mayor is furious over this, apparently.

\* \* \*

The point is that a building that was [an] historic landmark, an historic landmark has been demolished, and it happened because big money went somewhere. If I were the Mayor, I would be investigating bank accounts, I would be investigating sudden big purchases of anything. I would be investigating what kind of cars people are driving. I would be checking it out because something happened here, and they got a stamp of approval when the department had been told not to allow this.

\* \* \*

\*\*\* [I]f it were a school for poor low lifes, this would never have happened because no one would have razed a classic historic building for them ... They only did that because there is money at work, because there's a string of Jaguars ... Mercedes Benzes, every kind of fancy car you can imagine ... that's double parked all the way down that street.

\* \* \*

The issue is a landmark torn down against the Mayor's orders without anybody's permission except some high-ranking official, which I would immediately investigate, and investigate his finances, just on the basis of what we see."

In addition to these comments, Roma also expressed her concern that "they" were just lying about the physical condition of the coach house.

Co-host: "These buildings are eventually going to come down. And if the thing is falling apart anyway, why not bulldoze it, put up a nice fresh one."

Roma: "It wasn't falling apart. They are just flat lying about it. They're just flat lying. There were—there were shenanigans going on over there. And whomever is responsible for this should be fired, period."

Soon after Roma's broadcast, the School filed a complaint stating that these comments, insinuating that the School had lied and bribed the city to obtain the permit, were defamatory *per se*. Defendants filed a motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). Defendants claimed that Roma's statements were not defamatory *per se* under the innocent construction rule and that they were protected under the first amendment to the United States Constitution (U.S. Const., amend. I). The trial court held that Roma's statements did accuse the School of bribery, but that it was possible to innocently construe the

accusation as being directed at others besides the School. Furthermore, the alleged accusation of lying was determined by the court to be rhetorical hyperbole, not an assertion of fact. In the end, the trial court entered an order granting the motion to dismiss, which plaintiff now appeals.

On appeal, plaintiff argues that the trial court erred in holding that: (1) the allegations of bribery could be reasonably and innocently construed as accusing someone other than plaintiff; and (2) the allegations of lying could be innocently construed as referring to someone other than plaintiff or innocently construed as rhetorical hyperbole. Defendants respond that Roma's statements do not fall within any of the defamatory *per se* categories of statements and that the statements can be innocently construed. Alternatively, they argue that Roma's statements are expressions of opinion, protected by the first amendment.

■ We begin our analysis by noting that a motion to dismiss under section 2—615 challenges the legal sufficiency of the complaint. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991). The relevant inquiry is whether sufficient facts are contained in the pleadings which, if proved, would entitle a plaintiff to relief. *Urbaitis*, 143 Ill. 2d at 475. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996). Upon review of an order granting a section 2—615 motion, all well-pleaded facts are taken as true. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 195, 652 N.E.2d 267 (1995). In making this determination, the reviewing court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. *McGrath v. Fahey*, 126 Ill. 2d 78, 90, 533 N.E.2d 806 (1988). In reviewing orders on a motion to dismiss, we apply a *de novo* standard of review. *Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 237, 655 N.E.2d 974 (1995).

■ We now turn to the defamation action. A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201 (1992); Restatement (Second) of Torts § 559 (1977). Defamatory *per se* statements are when the defamatory character of the statement is apparent on its face—that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed. *Owen v. Carr*, 113 Ill. 2d 273, 277, 497 N.E.2d 1145 (1986). If a defamatory statement is actionable *per se*, the plaintiff need not plead or

prove actual damage to his reputation to recover. *Owen*, 113 Ill. 2d at 277.

■ In Illinois, there are five categories of defamatory statements that give rise to a cause of action for defamation *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a communicable disease which, if true, would tend to exclude one from society; (3) those imputing inability to perform or want of integrity in the discharge of duties of office or employment; (4) those prejudicing a particular party in his or her profession or trade; and (5) those stating false accusations of fornication or adultery. *Bryson*, 174 Ill. 2d at 88-89.

■ Even if a statement falls into one of these categories of words that are actionable *per se*, it will not be found defamatory *per se* if it is reasonably capable of an innocent construction. *Kolegas*, 154 Ill. 2d at 11. The innocent construction rule originated from *obiter dictum* in the landmark case *John v. Tribune Co.*, 24 Ill. 2d 437, 181 N.E.2d 105 (1962). In *John*, the court opined that allegedly defamatory publications are "to be read as a whole and the words given their natural and obvious meaning, and requires that words *** that are capable of being read innocently must be so read and declared nonactionable as a matter of law." *John*, 24 Ill. 2d at 442-43. However, the innocent construction rule was modified in *Chapski v. Copley Press*, 92 Ill. 2d 344, 442 N.E.2d 195 (1982). The *Chapski* court held:

"[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff." *Chapski*, 92 Ill. 2d at 352.

Just recently, the *Bryson* court emphasized:

"In applying the innocent construction rule, courts must give the allegedly defamatory words their natural and obvious meaning. [Citations.] Courts must therefore interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader. [Citation.] When a defamatory meaning was clearly intended and conveyed, this court will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibelous under the innocent construction rule." *Bryson*, 174 Ill. 2d at 93.

In determining whether a statement is defamatory, the court must focus on the predictable effect the statement had on those who received the publication or heard the broadcast. See *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 868, 659 N.E.2d 1225 (1995).

Moreover, "[i]f a statement is reasonably capable of a nondefamatory interpretation, given its context, it should be so construed, and there is no balancing of reasonable constructions." *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 260, 581 N.E.2d 275 (1991), citing *Mittelman v. Witous*, 135 Ill. 2d 220, 232, 552 N.E.2d 973 (1989). The rigorous standard of the modified innocent construction rule favors defendants in *per se* actions in that a nondefamatory interpretation must be adopted *if* it is *reasonable*. *Mittelman*, 135 Ill. 2d at 234. The tougher standard is warranted because of the presumption of damages in *per se* actions. *Mittelman*, 135 Ill. 2d at 234.

In sum, Illinois adopts the minority rule of the innocent construction rule. Under the majority rule, the judge decides whether the language is reasonably susceptible of a defamatory interpretation, and if it is, the case goes to the jury despite any conceivable innocent interpretation, to determine whether in fact the publication was understood to be defamatory or to refer to the plaintiff. In contrast, the Illinois rule, or the minority rule, prevents a case from getting to the jury if there is any possible reasonable innocent interpretation of the language. B. Donenberg, *The Reform of the Innocent Construction Rule in Illinois*, 60 Chi-Kent L. Rev. 263, 285 (1982); see also L. Malone & R. Smolla, *The Future of Defamation in Illinois After Colson v. Stieg and Chapski v. Copley Press, Inc.*, 32 DePaul L. Rev. 219, 293 (1983).

█ Plaintiff's first contention is that Roma's statements were defamatory *per se* because her comments fell under one of the categories of statements considered to be actionable *per se*. Plaintiff states that Roma's statements accused plaintiff of committing the crime of bribery. Defendants respond that these statements did not fall under one of the defamatory *per se* categories and further submit that the statements are reasonably susceptible to an innocent construction. Alternatively, defendants argue that if the statements are considered actionable *per se*, they are nevertheless expressions of opinion, protected under the first amendment.

As mentioned earlier, one of the categories of defamatory statements that gives rise to a cause of action for defamation *per se* is those imputing the commission of a criminal offense. *Bryson*, 174 Ill. 2d at 88. Bribery is a criminal offense (720 ILCS 5/33—1 (West 1994)) that is punishable by imprisonment for a period of up to 30 months (730 ILCS 5/5—7—1(d) (West 1994)). Bribery, an offense against public

justice, can be defined as the voluntary giving, offering or receiving of anything of value to influence a public official in the performance or discharge of his official duties. 11 C.J.S. *Bribery* § 2 (1995).

Plaintiff claims that the leading case here is *Catalano v. Pechous*, 83 Ill. 2d 146; 419 N.E.2d 350 (1980). However, we believe that plaintiff's reliance on this case is misguided. In *Catalano*, a city clerk, referring to the award of a city garbage contract, made the statement that "240 pieces of silver changed hands—30 for each alderman." *Catalano*, 83 Ill. 2d at 151. Our supreme court held that the statement was not made in a literal sense but, rather, was a defamatory allegation of bribery without a plausible innocent construction. *Catalano*, 83 Ill. 2d at 157. The supreme court further held that this statement was an actionable assertion of fact and not a constitutionally protected expression of an opinion. *Catalano*, 83 Ill. 2d at 164. In *Catalano*, the aldermen were public officials and we believe that it was very clear whom the city clerk was referring to when he made the defamatory comments about the aldermen. However, in the present case, even if Roma's statements—which alluded to the bribing of a city official—were to be considered defamatory *per se*, it is not clear whom Roma was referring to as the "briber" in her statements. Thus, even if the statements that follow are actionable *per se*, they could reasonably be innocently construed.

We now examine whether any of Roma's numerous statements imputed the criminal offense of bribery. First, Roma stated "this school put up an eyesore—I mean, they put up a modern building in the midst of this historic street *** and here by shenanigans *** by shenanigans," her co-host finished her sentence, "they tore the thing down so they could expand the school." "Shenanigans" is defined as "treachery or deceit." American Heritage Dictionary 1129 (2d Coll. ed. 1985). "Shenanigans" is a word in our language that has been used to express disorderly or deceitful behavior or activities. Some examples of "shenanigans" may include "a disorderly process," "financial misconduct," "procedural antics" or even "dirty politics." Thus, the hosts' comments on how the coach house was demolished "by shenanigans" raised an inference that there was questionable conduct.

Roma's co-host then stated that it was believed that Luis Martinez, an assistant to the building commissioner, issued the School's demolition permit, to which Roma responded:

> "[I]f I were going to investigate this case—the first thing I would do is go check out all kinds of things about this Luis or anybody else who seems to have anything to do with this, because there were shenanigans. This is a very, very, very wealthy school. The kids who go to this school get dropped off in Jaguars and get

dropped off in Mercedeses. *** And man, I am telling you, somebody in high places with lots of money, something is going on here, and the [m]ayor is furious over this."

Again, "shenanigans" implies questionable conduct. Examining the allegedly defamatory language in context, it is reasonable to assume that the listeners believe that "someone in high places with lots of money" used his clout or money to influence an official. However, it is *not* clear if the alleged "influencer" was the School, a parent or any other individual. This will be addressed in a later section.

A few moments later, Roma continued "if I were the mayor, I would be investigating bank accounts *** I would be investigating sudden big purchasing of anything. I would be investigating what kind of cars people are driving. I would be checking it out because something happened here [.]" Other comments included "they only did that because there is money at work" and "I say it stinks. I say it stinks Luis." She finished her thoughts by adding "the issue is a landmark torn down against the [m]ayor's orders without anybody's permission except some high-ranking official, which I would immediately investigate, and investigate his finance, just on the basis of what we see."

However, we are compelled to find that these statements can be innocently construed, thereby making them nonactionable. An "oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted *** *as referring to someone other than the plaintiff* it cannot be actionable *per se.*" (Emphasis added.) *Chapski*, 92 Ill. 2d at 352. Whether language is susceptible to an innocent construction is a question of law to be decided by the court. *Chapski*, 92 Ill. 2d at 352. In Illinois, where an allegedly defamatory statement does not mention the plaintiff by name, the plaintiff must plead extrinsic facts to demonstrate that third persons believed that the libelous statement referred to the plaintiff. *Bryson*, 174 Ill. 2d at 96. It should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the article or broadcast was about the plaintiff and that the allegedly libelous expression related to the school. See *Bryson*, 174 Ill. 2d at 96-97. Whether the article or broadcast was actually understood by third parties to be about the plaintiff is, of course, a question of fact for the trier of fact. See *Chapski*, 174 Ill. 2d at 98-99.

In *Kolegas v. Heftel Broadcasting Corp*, 154 Ill. 2d 1, 607 N.E.2d 201 (1992), the plaintiff brought a defamation *per se* action against two radio disc jockeys and a broadcasting corporation. The plaintiff

was promoting and producing classic cartoon festivals in order to raise money and increase the public awareness of a serious neurological disorder, neurofibromatosis, also known as the Elephant Man disease. The plaintiff hired the defendants to advertise the festival. The plaintiff called the radio station at one point, introduced himself as Anthony Kolegas, and discussed the festival on the air. Suddenly, the radio personalities hung up on him, and stated that Kolegas was "not for real," that he was just "scamming" them, and that there was "no such show as the classic cartoon festival." Our supreme court affirmed the appellate court and held that the word "scamming" could be found to be defamatory *per se* because it imputed a lack of integrity in the discharge of employment duties and prejudiced the plaintiff in his business by implying that he was lying and trying to deceive the defendants and the public at large. *Kolegas*, 154 Ill. 2d at 12. In the end, the *Kolegas* court found that the statements as a whole made by the defendants were defamatory *per se*. The court held that defendants' statements as a whole were not reasonably susceptible to an innocent construction, were not constitutionally protected opinion, and were not nonactionable rhetorical hyperbole. *Kolegas*, 154 Ill. 2d at 12.

Our case is distinguishable. In *Kolegas*, there was no question that the radio broadcasters were referring to the plaintiff. Not only did the defendants mention him by name, but they made the defamatory statements right after the plaintiff was cut off the air. Furthermore, there was no plausible innocent construction for the defendants' statements, such as "scamming" and "not for real." Rather, the statements clearly imputed an inability to perform or want of integrity in the discharge of employment duties and prejudiced the plaintiff in his profession. Trying to innocently construe those comments would have been a strained interpretation.

Upon examination of the record, we find that plaintiff failed to plead extrinsic facts to demonstrate how third persons could believe that Roma's defamatory statements referred to plaintiff. Although it is reasonable to assume that Roma was referring to the School when she commented on how the city officials allegedly took a bribe, it is just as reasonable to believe that someone other than the School, perhaps the parents of the students at the School, attempted to influence city officials or Martinez. Roma stated throughout her broadcast that the kids who go to this school get dropped off in Jaguars and Mercedeses, in essence alluding to the wealth of the students *and their families*. Furthermore, it may seem that Roma was referring to the parents, when she remarks "they only did that because there is money at work, because there's a string of Jaguars," and then "you can't even go down the street with the cars, because they are all double parked

there waiting to take their little angels home." Clearly, Roma was referring to the parents of the children, alluding to their wealth, and implicitly drawing a conclusion that they could have been the ones exerting influence over city officials.

In sum, we note that if these statements can be innocently construed, given their context, they should be so construed, since we are under no duty to balance the reasonable constructions. See *Harte*, 220 Ill. App. 2d at 260. We also emphasize that the focus of the innocent construction rule is whether defendant's statements can be innocently construed in a manner that falls outside of the *per se* category, not whether defendant's statements addressing the conduct of the unknown briber is reasonable. In other words, we can innocently construe Roma's statements as referring to someone other than the plaintiff, regardless of whether it is reasonable to think that a parent offered Martinez a bribe at the risk of getting caught and being punished. Moreover, plaintiff alternatively argues that even if Roma was referring to the parents, the parents were *acting as agents of the* School. However, we find this argument to be meritless and unsupported by any relevant authority.

■ The next issue plaintiff contends is that Roma's comments alleged that the School was "just flat lying" about the condition of the coach house. Plaintiff argues that this statement imputes to the School the inability to perform or want of integrity in the discharge of its duties of office, which is one of the defamatory *per se* categories.

Applying the general principles cited above, we cannot find that this statement falls under a defamatory *per se* category. Defendants cannot impute on the School the want of integrity in the discharge of its duties of office if it is not the School they are referring to in the first place. We examine the comments closely.

> Co-host: "These buildings are eventually going to come down. And if the thing is falling apart anyway, why not bulldoze it, put up a nice fresh one."
>
> Roma: "It wasn't falling apart. They are just flat lying about it. They're just flat lying. There were—there were shenanigans going on over there. And whomever is responsible for this should be fired, period."

We find that the School does not have a defamatory *per se* action based on this comment because we fail to find how this statement falls under a *per se* category, specifically the one that imputes an inability to perform or want of integrity in the discharge of office or employment duties. We interpret this comment, as might a reasonable listener of average intelligence, that Roma may have been referring to the persons in the city government or at city hall responsible for issuing

the demolition permit against the mayor's orders. After Roma states that "they" are lying, she opines that shenanigans were going on "over there." Given the context of these comments, we believe "over there" means over at city hall, not at the School. Moreover, we believe that the statement "whomever is responsible for this should be fired, period" alludes to an individual responsible for demolishing the coach house, such as Martinez, and that he should be terminated. We are also unpersuaded by plaintiff's argument that Roma was clearly referring to the School because the city officials could not possibly be the ones "just flat lying" about the coach house falling apart since the officials were the ones furious that the demolition occurred in the first place, according to plaintiff. Thus, giving these words their natural and obvious meaning, we cannot find that these words fall under any defamatory *per se* category of statements.

We also believe that *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 532 N.E.2d 790 (1988), is inapposite to the present case. In *Costello*, the plaintiff was a candidate for chairman of the St. Clair County board. The defendants endorsed the plaintiff based on the plaintiff's viewpoint that he would strongly oppose any new tax during his first term unless first approved by referendum. The plaintiff easily won the election. However, shortly after the election, the St. Clair County board passed a resolution to create a new transit district that would have a power to tax. Consequently, defendants published an editorial in its newspaper making statements such as "Jerry Costello lied to us," "when he lied to us, he lied to you," and "two more years of the Costello brand of lying leadership." *Costello*, 125 Ill. 2d 402, 532 N.E.2d 790. As a result, the plaintiff brought a libel action against the defendants, and the circuit court dismissed the complaint, only to be reversed by the appellate court. *Costello v. Capital Cities Media, Inc.*, 111 Ill. App. 3d 1009, 445 N.E.2d 13 (1982) (*Costello I*).

On remand, the case resulted in a judgment for plaintiff and the appellate court affirmed, but reversed the award of punitive damages and reduced the award of compensatory damages. *Costello v. Capital Cities Communications, Inc.*, 153 Ill. App. 3d 956, 505 N.E.2d 710 (1987) (*Costello II*). The appellate court in *Costello* II held that the editorial was libelous *per se* because it imputed to Costello a want of integrity in performing the duties of his office, and the innocent construction rule was not applicable. *Costello* II, 153 Ill. App. 3d at 967. The Illinois Supreme Court also held that the statements were libelous *per se* and were not reasonably susceptible to an innocent construction. *Costello*, 125 Ill. 2d at 417. However, the court reversed the cause on the grounds that the plaintiff failed to satisfy his burden of proving actual malice by clear and convincing evidence. *Costello*, 125 Ill. 2d at 419, 426.

In the *Costello* case, it was quite obvious as to who was being criticized in the editorial. It mentioned Costello several times and called him a liar several times. This is inapposite to our case because here Roma stated "[t]hey're just flat lying. There were shenanigans going on over there," which we found can be reasonably construed to refer to the city officials.

We also believe *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 617 N.E.2d 191 (1993), is not on point. In *Kumaran*, the plaintiff was a schoolteacher, and the defendant's newspaper article accused him of being engaged in the "full-time profession" and "working a scam" by filing "unwarranted suits for settlement money" and "numerous 'scam' lawsuits" "as part of a fraudulent scheme." *Kumaran*, 247 Ill. App. 3d at 219-20, 225-27. The appellate court held that these remarks were libelous *per se* because they essentially accused the teacher of being a "swindler," and therefore prejudiced him in his profession as a schoolteacher and presented him as someone who would not be an acceptable role model for young students. *Kumaran*, 247 Ill. App. 3d at 226-27. Unlike the plaintiff in *Kumaran*, plaintiff here did not persuasively show that Roma was referring to the School in the "just flat lying" comment or any other. In any case, a brief reference to a lie concerning whether a coach house was falling apart hardly compares to the detailed charges that the teacher faced in the *Kumaran* case.

Under the general principles cited above, we are compelled to find that Roma's statements have a plausible innocent construction, taking the statements out of the actionable *per se* category. In light of the disposition of these issues, we need not address whether these statements are constitutionally protected opinion. In light of the foregoing, we affirm the judgment of the circuit court.

Affirmed.

McNULTY, P.J., and RAKOWSKI, J., concur.