**CHICAGO CONSERVATION CENTER, Plaintiff–Appellant,**

**v.**

**Dale FREY, Bruce Frey and Patrick King, Defendants–Appellees.**

No. 01–3708.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 2002.

Decided July 2, 2002.

Before FLAUM, Chief Judge, BAUER, RIPPLE, Circuit Judges.

ORDER

The Chicago Conservation Center ("the Center"), an art restoration and preservation corporation, filed this state-law defamation action against, among others, art consultant Patrick King.[1] In particular, the complaint alleged that Mr. King had published false statements impugning the Center's business practices. The defamation claim against Mr. King ultimately proceeded to trial. At the close of evidence, Mr. King moved for judgment as a matter of law, contending that his allegedly de-

---

1. More precisely, this action arises from litigation originally concerning the Center's transport and storage of the art collection of Dale and Bruce Frey. The Freys filed a claim against the Center, alleging that it had damaged their art collection during the summer of 1998. Soon after, the Center filed a counterclaim—this defamation action—against Mr. Frey and his art consultant, Patrick King. The claim against Mr. Frey was resolved prior to trial. The remaining claims, including defamation against Mr. King, proceeded to final judgment which was entered on September 24, 2001. Neither the Freys' initial action nor the Center's claim against Mr. Frey are at issue on this appeal.

famatory statement constituted a nonactionable opinion. The district court agreed and dismissed the Center's defamation action against Mr. King. For the reasons set forth in the following order, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

On July 7, 1998, a fire swept through the Glencoe, Illinois, home of Dale and Bruce Frey ("the Freys"). The blaze caused smoke and soot damage to the couple's sizable art collection. In an effort to save the works, the Freys arranged for the Center, an entity specializing in restoration and preservation of fine art, to remove the collection from the residence. Over two days, the Center transported the collection to a temperature controlled storage room located on the third floor of its Chicago facility and proceeded to inventory the works of art. In addition, the Freys' insurance carrier asked the Center to prepare a conservation proposal for the collection.

Meanwhile, the Freys hired Patrick King to serve as a consultant who, among other things, would locate conservators to repair their art collection. Although Mr. King lacked formal training in chemistry or conservation of fine art, he had worked on many occasions as an art appraiser for various insurance companies. He also ran Chicago Freeze–Dry, a company that provided care for certain water and smoke damaged products.

Once in charge of the operation, Mr. King moved promptly to organize the conservation efforts. Rather than having each conservation firm individually view the collection and submit a preservation proposal, Mr. King planned to show the collection to several conservators simultaneously. According to Mr. King, the Center's facility proved too small to accommodate his plan. Accordingly, Mr. King informed the Center that he wished to relocate the collection to the larger facility of Pickens–Kane, a company that specializes in the transport and storage of fine art. He, however, invited the Center to join the other conservators in viewing the collection.

During late August or early September 1998, Mr. King and Mr. Frey examined the art collection at Pickens–Kane's facility.[2] Upon viewing the collection, Mr. Frey became upset when he noted the apparent fading of canvases and gashes on some of the frames. According to Mr. Frey, these problems were not observable when the Center removed the collection from his residence in July 1998. Mr. Frey also noticed that portions of the collection lacked any smell of smoke. He then asked Mr. King what had happened to the collection.

Mr. Frey and Mr. King offer slightly different recollections of the conversation that followed Mr. Frey's inquiry. Accord-

---

**2.** Notably, it is during this event that Mr. King made the allegedly defamatory statement. However, the testimony adduced at trial is equivocal as to the precise date on which this visit to Pickens–Kane occurred. Mr. King initially testified that the visit transpired on September 9, 1998. However, on cross-examination, he clarified his testimony and indicated that he and Mr. Frey viewed the collection on August 28, 1998.

At oral argument, we asked the Center's counsel whether his client took the position that these two dates represented separate instances in which Mr. King purportedly defamed the corporation. Counsel, however, disavowed such an interpretation of events, indicating that the defamatory statement occurred on either August 28 or September 9, but not on both days.

ing to Mr. Frey, his consultant informed him that the art had faded because it had been exposed to ozone at the Center. In comparison, Mr. King offered a more detailed account of events. According to Mr. King, upon examining the collection, he noticed that it did not smell of smoke, but rather possessed a faint bleach-like order "very similar to [the smell of ozone] that we produced when we use[ ] to ozone at our Skokie facility." Tr.147–5 at 22. Based on this observation, Mr. King informed Mr. Frey that the art may have been exposed to ozone.[3] When Mr. Frey pressed him as to whether the Center used the substance, Mr. King allegedly responded that the Center "had the capability of ozoning, but [ ] didn't tell him they had done it." Tr.147–5 at 31; *see id.* at 63. Over the months that followed, Mr. Frey sent letters to his insurer indicating that the Center had exposed the collection to ozone and consequently had ruined the paintings.

There was evidence that, on occasion, the Center had used ozone to remove residual smoke odors from artworks. During the period in which it stored the Freys' collection, the Center had an ozone machine on the seventh floor of its facility. There also was testimony adduced at trial that suggested that the Freys' artworks

were never subjected to an ozone treatment at the Center.

## B.  District Court Proceedings

Invoking the diversity jurisdiction of the district court,[4] the Freys filed an action against the Center alleging that it had damaged their art collection during July 1998. The Center filed a counterclaim against the Freys, seeking payment for its transport and storage of the art collection. Soon after the beginning of discovery, the Center obtained leave from the district court to bring a defamation action against Mr. Frey and Mr. King. Through its amended complaint, the Center alleged that Mr. Frey and Mr. King had published comments concerning the corporation that constituted, under Illinois law, defamation per se. With regard to Mr. King, the complaint stated that: "On information and belief, Patrick B. King stated to Bruce Frey, on or before September 10, 1998, that the Center had treated the Freys' artworks with ozone and that such treatment had ruined the artworks by fading them." R.25, ¶ 12. The Center also submitted that Mr. King had made similar statements to Mr. Frey and others during their visit to the Pickens–Kane facility.[5]

The Center's defamation claim against Mr. King,[6] as well those portions of the

---

**3.**  At trial, the Center presented expert testimony that cast doubt upon Mr. King's ability to smell ozone. In particular, an expert testified that ozone, which possesses a sweet odor, rapidly breaks down into atmospheric oxygen. As such, the expert questioned Mr. King's ability to smell ozone on the paintings weeks after it allegedly had been exposed to the substance at the Center. Moreover, the expert challenged Mr. King's conclusion that limited exposure to ozone would have caused the paintings to fade. Indeed, the expert indicated that the collection would have faded only if subjected to prolonged exposure to ozone.

**4.**  The Freys are citizens of the state of Florida. The Center is an Illinois corporation with its principal place of business in Chicago, Illinois. The amount in controversy exceeded $75,000.

**5.**  During oral argument, we asked the Center's counsel to whom Mr. King had published his allegedly defamatory statements. Despite the content of the complaint, counsel indicated that the Center only relied upon the comments Mr. King made to Mr. Frey. *See also supra* note 2.

**6.**  Prior to trial, the Center's defamation claim against Mr. Frey was resolved.

Freys' claims that survived summary judgment, proceeded to trial. At the close of evidence, Mr. King moved for judgment as a matter of law on the Center's defamation action against him. In particular, he submitted that the allegedly defamatory statement was a nonactionable statement of opinion. In the alternative, Mr. King submitted that his statement was protected by a qualified privilege and therefore nondefamatory. According to the Center, however, Mr. King's statement contained objectively verifiable factual assertions and therefore was characterized most accurately as an actionable statement of fact rather than as a nonactionable opinion. Moreover, the Center contended that Mr. King had abused any privilege he might otherwise enjoy because Mr. King had failed to investigate adequately his assertion concerning the Center's use of ozone on the painting.

After considering the parties' positions, the district court granted Mr. King's motion, concluding that "I have determined that the statement Mr. King made was, in fact, an opinion. Consequently, it's not covered by defamation per se." Tr.147–9 at 31. Soon after, a jury returned verdicts in favor of the Freys on all remaining counts of the litigation. On September 24, 2001, the district court entered a final judgment on all of the parties' claims, including the defamation action against Mr. King.

## II

### DISCUSSION

### A.

We review de novo the district court's grant of judgment as a matter of law. *See Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707 (7th Cir.1999). Under Federal Rule of Civil Procedure 50(a), judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. Proc. 50(a)(1). "The standard for granting judgment as a matter of law 'mirrors' the standard for granting summary judgment." *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 886 (7th Cir.2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). We therefore examine the record in its entirety and consider the evidence in the light most favorable to the nonmoving party. *Murray,* 252 F.3d at 887. After doing so, "[w]e will reverse the judgment only if enough evidence exists that might sustain a verdict against the nonmoving party." *Lane,* 184 F.3d at 707.

### B.

The Center submits that it has asserted a viable action for defamation per se against Mr. King. In particular, it contends that Mr. King's comment to Mr. Frey contained verifiable facts, negating the district court's conclusion that the statement constituted a nonactionable opinion. In comparison, Mr. King argues that his remark merely was conjecture and surmise, amounting to nothing more than an opinion.

### 1.

Well-settled principles of Illinois' law govern this defamation action.[7] "A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Bry-*

---

7. The parties agree that Illinois substantive law governs this claim.

son v. News Am. Publ'ns, Inc., 174 Ill.2d 77, 220 Ill.Dec. 195, 672 N.E.2d 1207, 1214 (1996). In certain limited circumstances, an individual's comments may constitute defamation per se,[8] words "so obviously and naturally hurtful to the person aggrieved that proof of their injurious character is unnecessary." *Gardner v. Senior Living Sys., Inc.,* 314 Ill.App.3d 114, 246 Ill.Dec. 822, 731 N.E.2d 350, 354 (2000). Simply put, if a statement amounts to defamation per se, the injury to the plaintiff's reputation is apparent and, consequently, there is no need to plead and to prove special damages. *See id.*

As a general rule, Illinois courts recognize five categories of statements that constitute defamation per se. *See Chicago City Day Sch. v. Wade,* 297 Ill.App.3d 465, 231 Ill.Dec. 835, 697 N.E.2d 389, 393 (1998). In the case of a corporate plaintiff, however, only three of the categories potentially are applicable: statements imputing the commission of a criminal offense; statements imputing inability to perform or want of integrity in the discharge of duties of office or employment; or statements prejudicing a particular party in its profession or trade. *See, e.g., Chicago City Day Sch.,* 231 Ill.Dec. 835, 697 N.E.2d at 394–95 (noting that allegations of bribery made against a not-for-profit corporation could constitute statements imputing com-

mission of a criminal offense); *Quality Granite Constr. Co., Inc. v. Hurst–Rosche Eng'rs, Inc.,* 261 Ill.App.3d 21, 198 Ill.Dec. 528, 632 N.E.2d 1139, 1143 (1994) (finding that accusations made against corporate plaintiff imputed an inability to perform and prejudiced the entity in its trade). We note that some Illinois cases apply a more refined standard in defamation actions involving a corporate plaintiff. Under this line of authority, for a corporate plaintiff to maintain a claim of defamation per se, the statements "must assail a corporation's financial or business methods or accuse it of fraud or mismanagement."[9] *Am. Int'l Hosp. v. Chicago Tribune Co.,* 136 Ill.App.3d 1019, 91 Ill.Dec. 479, 483 N.E.2d 965, 969 (1985); *Audition Div., Ltd. v. Better Bus. Bureau of Metro. Chicago,* 120 Ill.App.3d 254, 75 Ill.Dec. 947, 458 N.E.2d 115, 118 (1983).

In this case, Mr. King indicated that the art had faded because it had been exposed to ozone at the Center. On its face, the statement impugns the Center's competence in handling preservation work, imputing an inability to perform and prejudicing the corporation in its particular trade. The remark criticizes the corporation's business methods. In particular, the comment indicates that the Center's pres-

---

**8.** In general, defamatory statements fall into two categories—defamation per quod and defamation per se. To maintain an action for defamation per quod, a plaintiff not only must allege extrinsic facts to prove the defamatory nature of the statement but also must plead and must prove special damages. *See Dubinsky v. United Airlines Master Executive Council,* 303 Ill.App.3d 317, 236 Ill.Dec. 855, 708 N.E.2d 441, 447 (1999).

**9.** We note that more recent Illinois defamation cases involving corporate plaintiffs neither discuss nor reference this line of authority. *See, e.g., Chicago City Day Sch. v. Wade,* 297 Ill.App.3d 465, 231 Ill.Dec. 835, 697

N.E.2d 389, 393 (1998); *Barry Harlem Corp. v. Kraff,* 273 Ill.App.3d 388, 210 Ill.Dec. 101, 652 N.E.2d 1077, 1079–81 (1995); *Quality Granite Constr. Co., Inc. v. Hurst–Rosche Eng'rs, Inc.,* 261 Ill.App.3d 21, 198 Ill.Dec. 528, 632 N.E.2d 1139, 1143 (1994). Rather, the more recent cases simply ask whether the corporate plaintiff's claim implicates one of the five categories of defamation per se recognized under Illinois law. The two lines of cases are not necessarily in tension. Accusations that assail a corporation's business methods or accuse it of fraud or mismanagement may impute an inability to perform and prejudice an entity in its trade or profession.

ervation techniques damaged, rather than conserved, the artworks.

## 2.

Although a statement seemingly may fit into one of the defamation per se categories, this fact, standing alone, "has no bearing on whether the alleged defamatory statement is actionable." *See Hopewell v. Vitullo*, 299 Ill.App.3d 513, 233 Ill.Dec. 456, 701 N.E.2d 99, 102 (1998). Indeed, certain factors may neutralize the defamatory nature of the statement, rendering it nonactionable as a matter of law. For instance, a plaintiff cannot maintain an action for defamation per se against a defendant if the defendant's remarks were substantially true, *see Parker v. House O'Lite Corp.*, 324 Ill.App.3d 1014, 258 Ill. Dec. 304, 756 N.E.2d 286 (2001), or susceptible to an innocent, nondefamatory construction, *see Bryson v. News Am. Publ'ns, Inc.*, 174 Ill.2d 77, 220 Ill.Dec. 195, 672 N.E.2d 1207, 1221 (1996). Likewise, the First Amendment affords protection from liability to a speaker expressing a "pure opinion." *See Bryson*, 220 Ill.Dec. 195, 672 N.E.2d at 1219–21; *Wynne v. Loyola Univ. of Chicago*, 318 Ill.App.3d 443, 251 Ill.Dec. 782, 741 N.E.2d 669, 675 (2000).

In this vein, Mr. King submits that the district court correctly concluded that his statement concerning the Center constituted a nonactionable opinion protected under the First Amendment. The Illinois courts repeatedly have held that an otherwise defamatory statement is protected under the First Amendment and rendered nonactionable only if the remark "cannot be reasonably interpreted as stating actual facts." *Bryson*, 220 Ill.Dec. 195, 672 N.E.2d at 1220 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)); *Dubinsky v. United Airlines Master Executive Council*, 303 Ill.App.3d 317, 236 Ill.Dec. 855, 708 N.E.2d 441, 447 (1999). The crux of our inquiry, then, is whether the alleged defamatory statement contains objectively verifiable factual assertions. *See Hopewell*, 233 Ill.Dec. 456, 701 N.E.2d at 103 (citing *Bryson*, 220 Ill.Dec. 195, 672 N.E.2d at 1220). Although "in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." *Wynne v. Loyola Univ. of Chicago*, 318 Ill.App.3d 443, 251 Ill.Dec. 782, 741 N.E.2d 669, 675 (2000). Moreover, the speaker's remarks cannot be divorced from the context in which they occurred. In particular, the circumstances under which the remark was made may "negate[ ] the impression that the statement ha[d] factual content." *Hopewell*, 233 Ill.Dec. 456, 701 N.E.2d at 103. Simply put, "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Wilkow v. Forbes*, 241 F.3d 552, 555 (7th Cir.2001) (construing Illinois defamation law).

## 3.

After considering these principles, we must conclude that Mr. King's statement constitutes a nonactionable opinion. In particular, the remarks upon which the Center relies cannot reasonably be interpreted as making a factual assertion. In August or September 1998, Mr. Frey viewed his art collection for the first time since it had left his home in early July 1998. His inspection lead him to believe that the paintings had faded; he promptly asked Mr. King the possible cause of the damage to his collection. Although the record provides conflicting accounts as to Mr. King's precise response, he apparently indicated that the art had faded because it

had been exposed to ozone at the Center. It is true that merely prefacing a statement with phrases such as "I think" or "I believe" will not transform an otherwise factual assertion into a nonactionable opinion. *See, e.g., Dubinsky,* 236 Ill.Dec. 855, 708 N.E.2d at 448. However, in this instance, even when viewing the statements in the light most favorable to the Center, Mr. King could not have been understood to claim that he was in possession of any objectively verifiable facts when he made his statements. The context of the conversation, particularly the speed at which it transpired, belies such an interpretation of his remarks. Moreover, Mr. King offered his remarks concerning the Center only when asked what may have happened to the paintings. Placing the words in this context makes clear that Mr. King merely offered a theory as to the cause of damage. Although the Center contends that Mr. King's statement contained verifiable factual assertions such as the collection had been exposed to ozone, all opinions imply facts at some level. *See Wynne,* 251 Ill. Dec. 782, 741 N.E.2d at 675. In this case, the context of the statement and the tenor of the conversation between Mr. Frey and Mr. King make evident that the remarks were simply an opinion. Accordingly, we conclude that Mr. King's remarks are not actionable under a defamation per se theory.[10]

### Conclusion

The district court correctly concluded that Mr. King's statement constitutes a nonactionable opinion. Accordingly, we affirm the judgment of the district court.

AFFIRMED

---

10. Because we believe that Mr. King must prevail on the ground that his statement constitutes an opinion, we need not address his alternative arguments for affirmance.