2023 IL App (1st) 210977-U

SECOND DIVISION
January 24, 2023

No. 1-21-0977

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| REVEREND PATRICIA A. CAREY, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | 20 L 4225 |
| PHILLIP PRITZKER, DAVID BARNHART, and THE | ) | |
| HABITAT COMPANY OF ILLINOIS, LLC, an Illinois | ) | Honorable |
| Limited Liability Company, | ) | Ronald F. Bartkowicz, |
| | ) | Judge Presiding |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Complaint was properly dismissed, as it failed to state claims for defamation, false lights, or intentional infliction of emotional distress.

¶ 2    Plaintiff, Reverend Patricia Carey, appeals the dismissal of her claims of defamation, false light, and intentional infliction of emotional distress that she brought against the management company of her condominium building and two of its individual employees. She argues that three allegedly false statements by defendants are sufficient to form the basis of each of her tort claims. We disagree and, for the following reasons, affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4       As we are reviewing a dismissal under section 2-615 of the Code of Civil Procedure, we draw our facts from the complaint. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996); 735 ILCS 5/2-615 (West 2020).

¶ 5       Rev. Carey is an ordained minister who owns a unit in a large condominium building in downtown Chicago. The building is managed by defendant, The Habitat Company (Habitat). Defendant Phillip Pritzker (Pritzker) is Habitat's general manager. Defendant David Barnhart (Barnhart) is a vice president of Habitat and Pritzker's supervisor.

¶ 6       Rev. Carey has been a vocal proponent of making the building smoke-free. She has made "efforts to secure publicly funded support among smoke-free initiatives and agencies in Chicago." That backdrop forms the basis of the first two of the three allegedly defamatory statements.

¶ 7       The first occurred in February 2015, when Pritzker sent an email to the condominium board president, stating that Rev. Carey "brings a certain religious zeal to her opinions and thoughts about what should be done" on the smoke-free topic.

¶ 8       The second allegedly defamatory statement arose in a January 2016 email that Pritzker sent to the office of the neighborhood alderman concerning Rev. Carey. Regarding Rev. Carey's views on smoke-free initiatives, Pritzker stated in part:

> "I share this information with you as background in the event that this person either speaks to you personally, or tries to engage the Alderman—his head will spin like the Exorcist should he or anyone from the staff actually meet with this person. Just as an FYI the above is offered."

¶ 9    Rev. Carey alleged in her complaint that the reference to the Exorcist was intended to "present Rev. Carey as a screaming, uncontrollable, demon-possessed woman," a direct reference to her "vocation as an ordained minister."

¶ 10    These two allegedly defamatory statements were not discovered until April 2019, approximately the same time an issue arose regarding an alleged leak from Rev. Carey's unit. In November 2019, during a board meeting to authorize action against Rev. Carey, Barnhart, Habitat's vice president, made the following statements that Rev. Carey claims constituted the third defamatory statement:

> "[Board president]: Any other thoughts, comments before we move to [a second] vote?
>
> [Board vice-president]: I'd like to make a comment. Last meeting Mr. Barnhart was going to speak to the owner and try to resolve, mitigate, the problem if possible. Mr. Barnhart, were you able to do anything with the owner of the unit?
>
> [Barnhart]: I was able to make contact with the owner of the unit. *I was not able to secure the owner's cooperation in facilitating access by the Association.*
>
> [Board vice-president]: Well, what does that mean? ... Excuse me ... Did you call them? Did you write them? Did you e-mail? Did you fax?
>
> [Barnhart]: This was by e-mail. *I was given any number of excuses as to why it was not a good time to talk about the matter.*
>
> [Board vice-president]: Okay. Did they have legal counsel when you spoke to them?
>
> [Barnhart]: I don't believe so.
>
> [Board president]: Thank you. Any other thoughts, comments before we move to

vote." (Emphasis added.)

¶ 11    Rev. Carey alleges that Barnhart's statements "falsely and recklessly accused Rev. Carey of causing water to leak from her Unit" and accused her of "refusing the Association access to her unit to investigate the alleged leak." In her view, Barnhart's "false statements" caused the condo board to file suit against her.

¶ 12    Based on these three statements, Rev. Carey filed a complaint against Habitat, Pritzker, and Barnhart sounding in defamation, false light invasion of privacy, and intentional infliction of emotional distress.

¶ 13    For each defamation claim, Rev. Carey alleged that the statements constituted defamation *per se*—meaning harm to her reputation was presumed—because they "are damaging to Plaintiff in that the statements impugn her personal and professional integrity in the public eye." "In the alternative," she also alleged the statement were simply "defamation"—meaning defamation *per quod*, where reputational harm is not presumed but must be proven. (We will discuss these different theories of defamation in more detail below.)

¶ 14    Defendants moved to dismiss the complaint. They first argued that the case was barred by *res judicata*, as Rev. Carey had filed suit against Habitat in another case. They also argued that the case should be dismissed under section 2-615 for failure to state a claim.

¶ 15    The circuit court rejected defendants' *res judicata* defense but dismissed the complaint for failure to state a claim under section 2-615. The court first discussed the type of defamation plaintiff was actually claiming. Despite the complaint appearing to claim both *per se* and *per quod* defamation, the court noted: "Neither party clearly asserts that this is defamation *per se,* however their arguments only pertain to defamation *per se*." Because the court determined that Rev. Carey was *only* claiming defamation *per se*, it applied the innocent construction rule to find

all three statements non-actionable. It also concluded that the Exorcist comment was non-factual, sarcastic, hyperbole. Aside from the deficiencies in the statements themselves, the court found that Barnhart's statements at the board meeting occurred during a "quasi-judicial" proceeding and were absolutely privileged.

¶ 16    As to the false-light claim, the court found that, as the claims were premised on the defamatory statements, the false-light claim failed as well. As to intentional infliction of emotional distress, it concluded that none of the alleged statements were "extreme or outrageous."

¶ 17    Rev. Carey moved for reconsideration. The court denied that motion, and Rev. Carey timely appealed.

¶ 18                                    ANALYSIS

¶ 19    We review a section 2-615 dismissal *de novo*, meaning we perform the same analysis as the circuit court. *Kapotas v. Better Government Association*, 2015 IL App (1st) 140534, ¶ 26. A 2-615 motion tests the sufficiency of a complaint. *Bryson*, 174 Ill. 2d at 86.  We accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* A case should not be dismissed unless no set of facts would entitle the plaintiff to recover. *Id.* We may affirm the trial court's judgment of dismissal on any basis in the record, regardless of whether it was the trial court's stated basis. *Mazal v. Arias*, 2019 IL App (1st) 190660, ¶ 17.

¶ 20    Before this court, Rev. Carey argues the circuit court erred in dismissing each claim. We address each tort claim separately.

¶ 21                                    I. Defamation

¶ 22    To state a claim for defamation, a plaintiff must plead that a "defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to

a third party, and the publication caused damages." *Hadley v. Doe*, 2015 IL 118000, ¶ 30. There are two types of defamation claims: *per se* and *per quod*. *Kolegas v. Heftel Broadcasting Corporation*, 154 Ill. 2d 1, 10 (1992).

¶ 23                                    A. Defamation *Per Se*

¶ 24     We begin with Rev. Carey's claim that her complaint stated actionable claims of defamation *per se*. Statements are defamatory *per se* when the defamatory nature of the statement is so obviously harmful to the plaintiff's reputation that no additional proof or context is necessary. *Id.*

¶ 25     Illinois common law recognizes a limited category of statements as defamatory *per se*: "(1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Id.* In addition to these four categories, false claims of adultery and fornication were added by statute. *Dobias v. Oak Park and River Forest High School District 200*, 2016 IL App (1st) 152205, ¶ 55.

¶ 26     For each alleged false statements, Rev. Carey first argues that they fall within two of the *per se* categories-"(3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Kolegas*, 154 Ill. 2d at 10. She claims the defendants' statements attack her integrity and ability as a pastor.

¶ 27                                    1. "Religious Zeal"

¶ 28     We begin with the first statement, allegedly made by Pritzker in an email, that Rev. Carey "brings a certain religious zeal to her opinions and thoughts" on making her condo building

smoke-free. On this point, the circuit court concluded that "There is no indication of what 'religious zeal' is meant in this statement or whether it was being used in a positive or negative way; and Pritzker did not elaborate on this in his email. This statement is a mere opinion and, while it may be insulting to Plaintiff, it does not rise to the level of damaging Plaintiff's character in an irreparable way; therefore, it is not defamatory."

¶ 29     We would certainly agree that claiming someone has a "religious zeal" is not necessarily an insult in all circumstances; for some, being attributed with a passionate and steadfast devotion to a subject would be a compliment. But the bigger point, and the decisive point in our view, is that we agree with the circuit court that stating that someone has "religious zeal" is a statement of one's opinion, not a statement of fact.

¶ 30     Expressions of opinion are constitutionally protected from defamation claims. "Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Solaia Technology, LLC v. Specialty Pub Co.*, 221 Ill. 2d 558, 583 (2006) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)).

¶ 31     That is not to say that all statements of fact, if phrased as an opinion, can avoid a defamation claim; to be sure, "a false assertion of fact can be libelous even though couched in terms of an opinion." *Bryson*, 174 Ill. 2d at 99-100; *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)); see *Solaia*, 221 Ill. 2d at 581 ("there is no artificial distinction between opinion and fact: a false assertion of fact can be defamatory even when couched within apparent opinion or rhetorical hyperbole.").

¶ 32     The dividing line between nonactionable opinion and actionable statements is restrictive: an opinion "is constitutionally protected only if it cannot be reasonably interpreted as stating

actual fact." *Solaia*, 221 Ill. 2d at 581; *Kolegas,* 154 Ill. 2d at 14-15. To make that determination, we consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Hadley*, 2015 IL 118000, ¶ 33; see *Solaia*, 221 Ill. 2d at 581.

¶ 33    For example, there is no difference between saying "Jones is a liar" and "in my opinion Jones is a liar." *Bryson*, 174 Ill. 2d at 99-100. Both are defamatory because the core of each statement is capable of a *factual* verification—whether, in fact, Jones is a liar. In *Bryson*, our supreme court held that the defendant's statement that Bryson was a "slut" was actionable, as "[t]he clear impact of the statement was that Bryson was, in fact, sexually promiscuous." *Id*. In contrast, in *Solaia Technology, LLC v. Specialty Pub Co.*, 221 Ill. 2d 558, 581 (2006), the supreme court found that a reference to individuals as "deeply greedy" was not actionable defamation, as the word "greedy" had "no precise meaning, and it is not verifiable." *Id*. It was thus a protected opinion. *Id*. at 582.

¶ 34    The alleged reference here to Rev. Carey's "religious zeal" is nonactionable opinion. That phrase is an inherently subjective one incapable of precise or readily understandable meaning. It is not a statement that could be ultimately branded as true or false, any more than one could conclusively determine whether someone was "greedy." Instead, the level of Rev. Carey's devotion to the smoke-free initiative, like one's level of "greed," is clearly in the eyes of the beholder. Regardless of whether Rev. Carey found this statement personally insulting, the statement did not constitute actionable defamation.

¶ 35                                2. "Exorcist" Comment

¶ 36    For similar reasons, Pritzker's alleged statement that the local alderman's "head will spin like the Exorcist," should he converse with Rev. Carey on the smokefree topic, is not actionable.

¶ 37    Like opinions, rhetorical hyperbole cannot constitute actionable defamation. See *Bryson*, 174 Ill. 2d at 100 (collecting cases). We ask the same question: whether the hyperbole or exaggeration can be " 'reasonably interpreted as stating actual facts.' " *Id.* (quoting *Milkovich*, 497 U.S. at 20).

¶ 38    The circuit court correctly answered that question in the negative, as "it is physically impossible for someone's head to spin 360 degrees." We agree, of course, and would go further. Even if we looked past Pritzker's obvious sarcasm in invoking a famous cinematic moment, at bottom he was predicting that the alderman would find a conversation with Rev. Carey to be unpleasant, if not intolerable. But that, itself, is merely Pritzker's opinion of how he perceives Rev. Carey and thus how he would expect someone else to react to her; it is his subjective take, incapable of verification as "true" or "false." No reasonable person would consider this statement to be communicating an actual fact, and thus this statement is not actionable, either.

¶ 39    For these reasons, the defamation counts related to these two alleged statements were properly dismissed. But we would add one additional comment. Each of the two statements we have so far reviewed in some way invoked the subject of religion—one directly so, referring to her "religious zeal" about smoke-free issues, the other indirectly (at least arguably) by referring to a movie involving the religious ceremony of exorcism. It is not lost on us that our plaintiff here is a member of the clergy, and thus she may have found those statements particularly offensive for that reason. On appeal, she repeatedly hammers home that point—that Pritzker was mocking her and disrespecting her position as a member of the clergy.

¶ 40    That may well be true. But the law of defamation is not intended to protect individuals from offensive comments. As we have repeatedly noted above, it is intended, quite narrowly, to

protect individuals from reputational harm caused by *false* statements of *fact* made about them. Mere offense, without false factual statements, are not actionable as defamation claims.

¶ 41                                3. Failure to Cooperate

¶ 42    Finally, we reach the alleged statements by Barnhart at the condo board meeting, where he accused Rev. Carey of causing water to leak from her unit and "refusing the Association access to her unit to investigate the alleged leak."

¶ 43    While these statements are not statements of opinion or rhetorical hyperbole, Rev. Carey's claim here suffers from a different flaw—the statements do not qualify under a recognized category of defamation *per se*.

¶ 44    As noted, Rev. Carey claims that this statement falls within two of the *per se* categories recognized under Illinois law: "words that impute an inability to perform or want of integrity in the discharge of duties of office or employment" and "words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Kolegas*, 154 Ill. 2d at 10.

¶ 45    To the extent that Barnhart stated that Rev. Carey was responsible for a water leak in her apartment, we fail to see how that alleged falsehood could possibly suggest that she is unable to adequately perform her duties as a pastor. Nor does it remotely suggest that she lacks integrity. The notion that this statement could qualify as defamation *per se* is utterly meritless and deserving of no further analysis.

¶ 46    The more nuanced question concerns the alleged statements by Barnhart that Rev. Carey was refusing access to her condo unit for inspection. Specifically, the complaint alleges that Barnart told the Board that, after trying to secure Rev. Carey's cooperation in accessing her condo unit, "I was given any number of excuses as to why it was not a good time to talk about the matter."

¶ 47    Rev. Carey claims that this statement constitutes defamation *per se* because "[c]haplains are not ordinarily portrayed as someone who gives excuses or prevents conflict resolutions. Quite the opposite."

¶ 48    We should be careful to note, as we have before, a distinction between personal and professional integrity. See *Jaros*, 2020 IL App (2d) 180654, ¶ 61. "An attack on personal integrity, no matter how it might diminish reputation and damage future business or employment prospects, is not necessarily an attack on professional integrity." *Id.*; see also *Cody v. Harris*, 409 F.3d 853, 858 (7th Cir. 2005) (applying Illinois law). Instead, " '[d]isparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is *peculiarly valuable* in the plaintiff's business or profession." (Emphasis added.) *Jaros*, 2020 IL App (2d) 180654, ¶ 61 (quoting Restatement (Second) of Torts § 573, cmt. e (1977)).

¶ 49    Because it may sometimes be difficult to separate personal from professional integrity, a statement will fit into one of these profession-related *per se* categories only if it " '*obviously* impute[s] a want of integrity in the performance of plaintiff's employment duties.' " (Emphasis in original.) *Id.* (quoting *Vicars-Duncan v. Tactikos*, 2014 IL App (4th) 131064, ¶ 33). Said differently, " 'the defamation of professional integrity must be directly associated with job skills or functions.' " *Id.* (quoting *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2019 WL 1505408, at *8 (N.D. Ill. Apr. 5, 2019) (applying Illinois law)).

¶ 50    Certain statements easily fall within the professional-disparagement categories. For example, the claim that a teacher on a school athletic trip was "rolling around on a bed in the privacy of a hotel room with a student-athlete clearly imputed a lack of integrity in her profession and prejudiced her in that profession." *Dobias*, 2016 IL App (1st) 152205, ¶ 72.

Claiming that an event promoter was "scamming" people by selling them tickets to a non-existent show damaged the plaintiff in his business of promoting said shows. *Kolegas*, 154 Ill. 2d at 11-12.

¶ 51    Others are much closer and focus on a particular aspect of the plaintiff's job. See *Jaros*, 2020 IL App (2d) 180654, ¶ 62. For example, in *Moriarty v. Green*, 315 Ill. App. 3d 225, 230 (2000), a newspaper stated that the plaintiff, a child psychologist, had "readily admitted that she sees her job as doing whatever the natural parents instruct her to do." In concluding that this statement qualified as defamation *per se*, the court considered the plaintiff's specific *professional* obligation to act in the best interest of the child. *Id*. at 233. In contrast, the newspaper claimed she was acting for the benefit of the *parents*, not the child—and had thus abandoned her professional duties. *Id.*

¶ 52    General attacks on character not directly linked to job performance, however, are not usually considered defamatory *per se*. See, *e.g.*, *Jaros*, 2020 IL App (2d) 180654, ¶ 62 ("[A] statement that a physician consorts with harlots is not actionable *per se*, although a charge that he makes improper advances to his patients is actionable; the one statement does not affect his reputation as a physician whereas the other does so affect it.") (quoting Restatement (Second) of Torts § 573, cmt. e (1977)).

¶ 53    Some cases have noted that certain professions—most notably teachers and clergy—are more closely and uniquely associated with general good character. See *Jaros*, 2020 IL App (2d) 180654, ¶ 62; *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 227 (1993); *Cobbs v. Chicago Defender*, 308 Ill. App. 55 (1941). Teachers, we have noted, must serve as "role model[s] for young students." *Kumaran*, 247 Ill. App. 3d at 227. And in *Cobbs*, 308 Ill. App. at 58, a case that

is over eighty years old, the court wrote that "it has been held that a clergyman in the practice of his profession must maintain a spotless reputation."

¶ 54     We are skeptical, over eighty years later, that virtually any factual slight directed at a member of the clergy would constitute defamation *per se*. And whatever the court in *Cobbs* may have said in *dicta*, its *holding* does not support that sweeping proposition. There, the statements accused the priest of "facing the possibility of questioning by State's Attorney's police concerning widespread rumors of a scandalous nature" and "unsavory incident of serious proportions." *Cobbs*, 308 Ill. App at 56-57. The statements in *Cobbs* are a far cry from the factual statement here—that a member of the clergy was avoiding opening her condo unit for inspection for a water leak.

¶ 55     And though the profession of teachers has been lumped in with the clergy in this regard (*Jaros*, 2020 IL App (2d) 180654, ¶ 62), we have not found that every unflattering misstatement about a teacher constitutes defamation *per se*, either. For example, an accusation that a teacher grabbed the arm of another teacher and tried to steer him into a room for a verbal confrontation, while obviously unflattering, did not "impugn[] plaintiff's integrity as a schoolteacher" and thus did not constitute defamation *per se*. *Dobias*, 2016 IL App (1st) 152205, ¶ 101.

¶ 56     We would likewise add here that other professions involve positions of trust governed by ethical codes—such as attorneys, physicians, and nurses—yet we have not found every unflattering misstatement of fact against these professionals to constitute defamation *per se*. For example, in *Vicars-Duncan v. Tactikos*, 2014 IL App (4th) 131064, ¶ 5, a prosecutor was accused in writing of lying to a *pro se* defendant about the presence of witnesses to the alleged crime and of telling the defendant he was "fighting a case he simply could not win" to induce a guilty plea. As troubling and damning as those job-related allegations were, we held them *not* to

be defamatory *per se*, because the statement did not specifically allege the violation of an ethical rule governing attorneys. *Id.* ¶ 33.

¶ 57    Likewise, a newspaper article claiming a doctor at a county hospital received improper payments for services during an unpaid leave was not considered defamatory *per se*, as it did not impute the doctor "lack[ed] ability as a medical professional or violated any rule of medical ethics." *Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 56. Finally, accusations that a nurse hurled epithets and other inappropriate insults at her coworkers was not defamatory *per se*, as it did not suggest that she lacked either the integrity or capacity to perform her job functions as a nurse. See *Heying v. Simonaitis,* 126 Ill. App. 3d 157, 165 (1984).

¶ 58    What is clear from this case law is that claims of improper behavior, even when connected to the performance of one's job, are not necessarily defamatory *per se*; the statements must indicate that the plaintiff lacks either the ability or the integrity to fulfill the job functions.

¶ 59    Here, the statement did not even go that far. Barnhart's statement had nothing to do with Rev. Carey's position as a pastor. There was no suggestion whatsoever that she could not perform her job or that she lacked the integrity to do so.

¶ 60    If we were to hold that the statement here—that a member of the clergy was stonewalling a leak inspection at her condominium—was enough to constitute profession-impugning defamation, it is hard to see what would *not* constitute defamation *per se* when it came to pastors. Every unflattering statement of fact could be somehow tied to a trait associated with the men and women of the cloth. Absent some direction from our supreme court, we are not inclined to stretch the case law that far.

¶ 61    We thus hold that the count relating to Barnhart's statement was properly dismissed as well.

¶ 62                                    B. Defamation *Per Quod*

¶ 63    Defamation *per quod* is any false statement that falls outside of the recognized categories of defamation *per se*—that is, they are not defamatory on their face. *Bryson*, 174 Ill. 2d at 87. The plaintiff must allege "extrinsic facts that demonstrate that the statement has a defamatory meaning." *Id.* Unlike defamation *per se*, a plaintiff claiming defamation *per quod* "must plead and prove that she sustained actual damage of a pecuniary nature ('special damages') to recover." *Id.* at 87-88.

¶ 64    Rev. Carey briefly argues on appeal that, even if the statements at issue did not constitute defamation *per se*, they would constitute *per quod* defamation at a minimum. Unfortunately, we cannot consider this argument, as it was forfeited. It was likely forfeited at the trial level, as the trial court found, but it was clearly forfeited on appeal.

¶ 65    The trial court noted that, in response to the motion to dismiss, Rev. Carey raised no argument that her claims could be salvaged as allegations of defamation *per quod*, and thus the trial court refused to consider that question. The record bears that out. But further still, Rev. Carey made no such argument in her opening appellate brief before this court; her arguments were solely directed at her allegations of defamation *per se*. The failure to raise any such argument in the opening brief constitutes forfeiture before this court. *Eckerty v. Eastern Illinois Foodbank*, 2022 IL App (4th) 210537, ¶ 31; also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued in opening brief are forfeited).

¶ 66    True, Rev. Carey did make two brief mentions of defamation *per quod* in her reply brief, but arguments cannot be raised for the first time in the reply brief, and the brief mentions of this doctrine without substantive argument would not merit our consideration, in any event. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (arguments may not be raised for first time in reply brief);

*Eckerty*, 2022 IL App (4th) 210537, ¶ 31 (quoting *Obert v, Saville*, 253 Ill. App. 3d 677, 682 (1993)) (" '[b]are contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived.' ")

¶ 67    For all of these reasons, the circuit court properly dismissed each defamation count in the complaint.

¶ 68                                II. False Light

¶ 69    Having found that the defendants' statements are not actionable in defamation, we can quickly resolve the arguments surrounding her false-light claims. It is well-settled that, if a false-light claim is premised on an allegedly defamatory *per se* statement, the failure of the statement to qualify as defamation *per se* will likewise doom the false-light claim. See *Benton v. Little League Baseball, Incorporated*, 2020 IL App (1st) 190549, ¶ 89; *Kapotas*, 2015 IL App (1st) 140534, ¶ 78; *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 263 (1991). The circuit court properly applied that reasoning in dismissing the false-light claims below.

¶ 70    Rev. Carey's only response is to again argue that her claims are sufficient to state a claim for false lights, but having failed to convince us that the statements were defamatory *per se* (or in two of the cases, defamation of any kind), she has no basis to sustain the false-light claims here.

¶ 71                III. Intentional Infliction of Emotional Distress

¶ 72    Finally, Rev. Carey alleged that these three statements constituted intentional infliction of emotional distress. To state that claim, the plaintiff must allege: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Kolegas*, 154 Ill. 2d at 20. The circuit court dismissed the claims, finding

that the three statements did not rise to the level of "extreme and outrageous conduct." The parties' arguments likewise focus on that question.

¶ 73    To reach the level of "extreme and outrageous," the defendant's conduct must "go beyond all possible bounds of decency" and "be regarded as intolerable in a civilized community." *Id.* at 21. " '[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not enough. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (quoting Restatement (Second) of Torts § 46, comment d, at 73 (1965)). In determining whether conduct meets this standard, we can consider the extent to which the defendant abused their position of authority over the plaintiff. *Id.*

¶ 74    As standalone conduct, none of the alleged statements come close to being so outrageous as to push the boundaries of tolerance in a civilized society. See *Kolegas*, 154 Ill. 2d at 21. But Rev. Carey claims they do because "Pritzker and Barnhart, in their capacity as building manager and Board President, each occupy positions of authority over the Reverend Carey." We cannot accept this argument for several reasons. First, as a factual matter, Barnhart was not the Board President; the complaint alleges that he was the vice-president of Habitat, the building management company, just as Pritzker was a Habitat employee. Second, while the management company might have "authority" in some sense of the word, the circuit court explained that

> "Barnhart and Pritzker were not in a position of authority or power over the Plaintiff, as she is a unit owner in the building. Barnhart and Pritzker are merely employees of the management company, meaning that Plaintiff has various rights and rules guaranteed to her as an owner. Finally, the statements have nothing to do with her owning the unit nor do they threaten her ownership"

¶ 75    It is not the existence of *some* authority that can give rise to a claim, but "conduct [that]

involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *McGrath v. Fahey*, 126 Ill. 2d 78, 86-87 (1988). For example, a landlord who attempts to extort money from his tenant on pain of eviction. *Id.* at 86 (citing Restatement (Second) of Torts § 46, comment e, at 73). The alleged "extreme and outrageous" statements in this case do not rise to this level. Certainly, the emails Pritzker sent did not; he told the condominium board president only that Rev. Carey brought religious zeal to her mission to turn the condo building smoke-free, and his email to the resident alderman's office, predicting that her advocacy would cause the alderman's "head to spin," could in no way be said to be an abuse of his "authority" over Rev. Carey. Barnhart's statements to the Board that Rev. Carey was stonewalling an inspection of her unit might have come closer, because they at least relate to the limited authority a property manager has, but are in no way threatening to exercise his authority to interfere with Rev. Carey's rights as a unit owner. At its very worst, Pritzker's language was insulting, and Barnhart exaggerated or misstated a fact that placed Rev. Carey in an unflattering light.

¶ 76    We agree with the circuit court that the three alleged statements are not transformed into "extreme and outrageous" because of an abuse of authority.

¶ 77                          CONCLUSION

¶ 78    The judgment of the circuit court is affirmed.

¶ 79    Affirmed.